STATE OF CONNECTICUT v. JULIO RIVERA
(10362)

O'CONNELL, LAVERY and LANDAU, Js.

Argued September 30, 1992—decision released February 2, 1993

*Susan A. Brown,* assistant public defender, with whom, on the brief, was *Adam Teller,* assistant public defender, for the appellant (defendant).

*Carolyn K. Longstreth,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *T. R. Paulding,* former assistant state's attorney, for the appellee (state).

LANDAU, J. The defendant was convicted, after a trial to the court,[1] of rioting at a correctional institution in violation of General Statutes § 53a-179b (a).[2] On appeal, the defendant claims that the trial court improperly (1) rejected the defendant's argument that General Statutes § 53a-179b (a) is unconstitutionally vague and overbroad, and (2) failed to grant the defendant's motion for judgment of acquittal on the basis of insufficient evidence. We affirm the judgment of the trial court.

---

[1] The trial court rendered the guilty verdict orally in open court. Practice Book § 4059 provides in relevant part that "[t]he court shall include in its decision its conclusion as to each claim of law raised by the parties. If oral, the decision shall be recorded by a court reporter and, if there is an appeal, the trial judge shall order the decision transcribed and the transcript of the decision shall be signed by the trial judge and filed in the trial court within ten days of the filing of the appeal. . . ."

The trial court did not adhere to this section, and the defendant did not seek to remedy this deficiency pursuant to Practice Book §§ 4051 or 4183. While we do not condone either practice, we will nonetheless review the defendant's claim in this case because the trial court made adequate findings on the record. See Practice Book § 4187.

[2] General Statutes § 53a-179b (a) provides: "A person is guilty of rioting at a correctional institution when he incites, instigates, organizes, connives at, causes, aids, abets, assists or takes part in any disorder, disturbance, strike, riot or other organized disobedience to the rules and regulations of such institution."

The trial court could reasonably have found the following facts. On June 25, 1990, a riot occurred at the Carl Robinson Correctional Institution. Inmates had posted fliers the previous weekend calling for a strike. Between 6 and 7 a.m. on the morning of the riot, correction officials noticed that few inmates were entering the mess hall for breakfast. This was considered unusual. Groups of inmates gathered in an open area known as "the circle," which is adjacent to several correctional buildings. A large group of inmates were at picnic tables in the circle and these inmates were heckling those inmates who were entering the mess hall for breakfast.

Correction officials made announcements over the public address system ordering the inmates to clear the yard. Officers Gary Reilly and Peter McDevitt walked around the circle to determine what was happening. As they walked around the circle, they focused their attention on the group of inmates at the picnic tables. At that time, Reilly recognized the defendant as being in that group. The officers approached that group and were surrounded by four inmates who began to "bump" them. The defendant was on a picnic table. Reilly felt that the situation was getting very serious and radioed the officials operating the public address system and told them not to make any more announcements. Despite his requests, two more orders to clear the yard were broadcast. A group of about 200 inmates began to march around the circle, shouting loudly. McDevitt observed the defendant with approximately ten other inmates near the front of this group.

Reilly ran to the front of the group and attempted to calm the inmates. Despite his attempts, the disturbance escalated into a full-fledged riot. Inmates began running in all directions, throwing rocks and setting fires. Some inmates displayed a banner demanding media coverage. The inmates looted some buildings and

burned others. Using tear gas, the correctional emergency response team restored order several hours later.

At trial, the defendant presented evidence in support of his claims that he was not part of the mob of inmates involved in the riot. The defendant also attacked the identification made by McDevitt.

After the trial court found the defendant guilty, the defendant filed a motion for judgment of acquittal, which the court denied. The trial court stated that it found the identification of the defendant by McDevitt credible. The trial court also found (1) that the defendant had disobeyed the order to clear the yard when he remained seated on the picnic table, and (2) that, by not complying with the order to clear the yard, the defendant did aid, abet, assist and take part in a disorder in violation of General Statutes § 53a-179b (a).

I

A

The defendant claims that General Statutes § 53a-179b is unconstitutionally vague on its face and should not be enforced. We disagree. Ordinarily, when a litigant challenges a statute as void for vagueness under the United States or state constitution, we confine our inquiry to the statute's applicability to the facts of the case. *State* v. *Cavallo,* 200 Conn. 664, 670, 513 A.2d 646 (1986); *State* v. *Eason,* 192 Conn. 37, 46, 470 A.2d 688 (1984). Where, however, a challenged statute, if vague, could intrude on fundamental constitutional guarantees such as first amendment rights, we will refuse to enforce the statute if we find that it is unconstitutionally vague on its face. *State* v. *Cavallo,* supra; see *Smith* v. *Goguen,* 415 U.S. 566, 573 n.10, 94 S. Ct. 1242, 39 L. Ed. 2d 605 (1974); *Grayned* v. *Rockford,* 408 U.S. 104, 108–109, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972); *Smith* v. *California,* 361 U.S. 147, 151, 80 S. Ct. 215, 4 L. Ed. 2d 205 (1959).

"Our inquiry into the facial validity of a statute focuses on whether indefiniteness in the meaning of the statute could reasonably create uncertainty over whether the statute prohibits expression that is protected by the first amendment. Such ambiguity is unconstitutional for two reasons: (1) it may deter individuals from exercising their first amendment freedoms for fear of incurring criminal liability; and (2) it vests enforcement officials with undue discretion to interfere with the right to freedom of speech." *State* v. *Cavallo,* supra, 671; see *Smith* v. *Goguen,* supra, 573–76; *Grayned* v. *Rockford,* supra, 109; *State* v. *Pickering,* 180 Conn. 54, 57–58 n.3, 428 A.2d 322 (1988).

Section 53a-179b was authoritatively construed and upheld in *State* v. *Roque,* 190 Conn. 143, 460 A.2d 26 (1983). Our Supreme Court held that "[b]y the use of the words 'incites,' 'instigates,' 'organizes,' 'connives at' and 'causes,' the statute makes those who commence, in the sense of plan, begin or start an occurrence proscribed by the second portion of the statute, whether organized or spontaneous, subject to conviction of a class B felony. In like manner, the statute, by use of the words 'aids,' 'abets,' 'assists' or 'takes part in,' does the same to those who join in any such occurrence. In short, although nine separate verbs are used, their common meanings and their association with each other causes them to fall into two groups: those that cover the leaders or planners and those who follow them in the proscribed occurrence, whether it is organized or spontaneous." Id., 152–53. *Roque* teaches us that this statute is not unconstitutionally vague. Actions that violate the statute are clearly set forth and there is no ambiguity as to its meaning. Therefore the defendant's claim must fail.

Nor is this statute unconstitutionally vague as applied to the facts of this case. " 'In order to surmount a vagueness challenge, "a statute must afford a person

of ordinary intelligence a reasonable opportunity to know what is permitted or prohibited." *McKinney* v. *Coventry,* 176 Conn. 613, 618, 410 A.2d 453 (1979). The constitutional requirement of definiteness applies more strictly to penal laws than to statutes that exact civil penalties. *Winters* v. *New York,* 333 U.S. 507, 515, 68 S. Ct. 665, 92 L. Ed. 2d 840 (1948). . . .' *State* v. *Schriver,* 207 Conn. 456, 460–61, 542 A.2d 686 (1988)." *State* v. *Palangio,* 24 Conn. App. 300, 302–303, 588 A.2d 644 (1991). A penal statute may survive a vagueness attack solely on a consideration of whether it provides fair warning. *State* v. *Pickering,* supra, 61.

*State* v. *Roque,* supra, provides adequate warning that the defendant's conduct is prohibited by § 53a-179b. The defendant was identified as having been among those inmates at the front of the group that marched around the circle prior to the beginning of the full-fledged riot. The defendant refused to obey the order to clear the yard. He also refused to heed Officer Reilly's attempt to prevent the escalation of the inmates activities. By refusing to cooperate with the attempts to maintain calm, and by marching around the circle with the inmates, the defendant did aid, abet, assist and take part in this disorder in violation of § 53a-179b.

B

The defendant's next claim is that § 53a-179b is unconstitutionally overbroad. We disagree.

The doctrines of vagueness and overbreadth are so closely related that "[s]ometimes the two are functionally indistinguishable." Note, "The First Amendment Overbreadth Doctrine," 83 Harv. L. Rev. 844, 845 n.5 (1970). The essence of an overbreadth challenge is that a statute that proscribes certain conduct, even though it may have some permissible applications, sweeps within its proscription conduct protected by the first amendment. *Secretary of State* v. *J. H. Munson Co.,*

467 U.S. 947, 968, 104 S. Ct. 2839, 81 L. Ed. 2d 786 (1984); *Members of the City Council of Los Angeles* v. *Taxpayers for Vincent,* 466 U.S. 789, 798–801, 104 S. Ct. 2118, 80 L. Ed. 2d 772 (1984); *Husti* v. *Zuckerman Property Enterprises, Ltd.,* 199 Conn. 575, 587, 508 A.2d 735, appeal dismissed, 479 U.S. 802, 107 S. Ct. 43, 93 L. Ed. 2d 373 (1986). Overbroad statutes, like vague ones, inhibit the exercise of constitutionally protected conduct. *Husti* v. *Zuckerman Property Enterprises, Ltd.,* supra. A party has standing to raise an overbreadth claim, however, "only if 'there [is] a realistic danger that the statute will significantly compromise recognized First Amendment protections of parties not before the Court . . . .' *Members of the City Council of Los Angeles* v. *Taxpayers for Vincent,* [supra, 801] . . . ." Id.; see also *Broadrick* v. *Oklahoma,* 413 U.S. 601, 613–15, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973). A single impermissible application of a statute, however, will not be sufficient to invalidate the statute on its face; rather, to be invalid, a statute must reach " 'a substantial amount of constitutionally protected conduct.' " *State* v. *Williams,* 205 Conn. 456, 472, 534 A.2d 230 (1987).

In this case, the statute is not unconstitutionally overbroad. The statute is specifically directed at two groups: those who lead or plan disturbances at a correctional institution, and, those who follow in the proscribed activity, whether organized or spontaneous. Section 53a-179b, as construed by our courts, does not reach a substantial amount of constitutionally protected conduct. Therefore, the defendant's overbreadth claim must fail. Id., 473.

## II

The defendant's final claim is that the evidence presented at trial was insufficient to prove beyond a reasonable doubt that the defendant's conduct violated § 53a-179b. We do not agree.

"Connecticut courts have consistently employed a two-part analysis in appellate review of the sufficiency of the evidence to sustain a criminal conviction. Whether we review the findings of the trial court or the verdict of a jury, our underlying task is the same." *State* v. *Johnson,* 26 Conn. App. 433, 435, 602 A.2d 36, cert. denied, 221 Conn. 916, 603 A.2d 747 (1992). We first review the evidence presented at trial, construing it in the light most favorable to sustaining the facts expressly found by the trial court or impliedly found by the jury. *State* v. *Owens,* 25 Conn. App. 181, 192, 594 A.2d 991, cert. denied, 220 Conn. 910, 597 A.2d 337 (1991). We then decide whether, on the basis of the facts thus established and the inferences reasonably drawn therefrom, the trial court or the jury could reasonably have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt. *State* v. *Famiglietti,* 219 Conn. 605, 609, 595 A.2d 306 (1991); *State* v. *Jarrett,* 218 Conn. 766, 770–71, 591 A.2d 1225 (1991), and cases cited therein.

It is for the court, as the fact finder in this case, to determine the credibility and the effect to be given the testimony. *State* v. *Grant,* 177 Conn. 140, 142, 411 A.2d 917 (1979). Moreover, it is the court's right to consider evidence, draw logical deductions and make reasonable inferences from the facts proven. *State* v. *Schoenbneelt,* 171 Conn. 119, 126, 368 A.2d 117 (1976); *State* v. *Ruth,* 16 Conn. App. 148, 154, 547 A.2d 548 (1988), cert. denied, 209 Conn. 827, 552 A.2d 434 (1989). A reviewing court cannot retry the case or pass on the credibility of a witness. *State* v. *Myers,* 193 Conn. 457, 473, 479 A.2d 199 (1984); *State* v. *Robinson,* 14 Conn. App. 40, 41, 539 A.2d 606, cert. denied, 488 U.S. 899, 109 S. Ct. 244, 102 L. Ed. 2d 233 (1988). This court does "not sit as a [seventh] juror, and [does] not ask whether [it] believe[s] the evidence established guilt beyond a

reasonable doubt, but rather, whether, after viewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State* v. *Lynch,* 21 Conn. App. 386, 400, 574 A.2d 230, cert. denied, 216 Conn. 806, 508 A.2d 63 (1990).

In order for a defendant to be found guilty of rioting at a correctional institution, he must plan or lead the disturbance, or take part in the disturbance at the correctional facility. Our review of the evidence indicates that the court reasonably could have believed Reilly and McDevitt when they testified that the defendant repeatedly failed to obey the orders to clear the yard, and that the defendant was seen marching at the front of the group before the full-fledged riot. Furthermore, the trial court reasonably could have determined that the evidence supported a finding of guilty beyond a reasonable doubt.

The judgment is affirmed.

In this opinion the other judges concurred.