CLAIR F. COLLINS *v.* JOHN WETHERBEE
(11411)

DUPONT, C. J., DALY and FOTI, Js.

Argued March 26—decision released June 1, 1993

*Michele C. Lukban,* for the appellant (defendant).

*Matthew J. Collins,* for the appellee (plaintiff).

DALY, J. This is an action involving podiatric malpractice arising out of the defendant's care of the plaintiff's foot. The defendant appeals from a judgment in favor of the plaintiff, after a trial to the court,[1] awarding $90,000 for injuries resulting from the defendant's

---

[1] The trial court orally rendered its findings of fact and its judgment in open court, but failed to sign the transcript of the decision as required by Practice Book § 4059. The defendant did not remedy this defect. See Practice Book § 4183. Nevertheless, because the trial court made adequate findings on the record, we shall review the defendant's claim. See *State* v. *Rivera,* 30 Conn. App. 224, 225 n.1, 619 A.2d 1146 (1993).

malpractice. The defendant claims that the damages awarded were excessive. We disagree with the defendant and affirm the judgment of the trial court.

The trial court found the following facts. In the fall of 1988, the plaintiff sought treatment from the defendant, a doctor of podiatric medicine, after dislocating the fifth toe of her right foot. On November 3, 1988, the defendant attempted to perform a slant osteotomy on the injured toe, but was unable to numb the plaintiff's foot due to defective novocaine. The plaintiff was not adequately notified of the complexity of the procedure or of the likelihood of its success.

On November 17, 1988, the defendant began to perform the procedure, but failed to use a sufficient amount of novocaine. When the defendant started drilling in the area of the plaintiff's fifth toe, the plaintiff complained of pain, and the defendant injected more novocaine. Later, the plaintiff experienced excruciating pain, and the defendant stopped operating. After the defendant dressed the foot and placed it back into the plaintiff's shoe, he advised the plaintiff to walk on the right foot so that she might break her injured toe on her own. The operation was never completed.

On November 21, 1988, the plaintiff telephoned the defendant and complained that she was in pain. The defendant referred her to the emergency room at Hartford Hospital for the purpose of alleviating her pain. The defendant did not tell the plaintiff to have the operation completed by another physician. While at Hartford Hospital, her foot was placed in a cast. She returned the next day, the cast was removed and a new cast was placed on her foot. The plaintiff was subsequently referred by a physician at Hartford Hospital to W. Jay Krompinger, an orthopedic surgeon, who did not complete the slant osteotomy. Instead, on November 29, 1988, he performed a wedge osteotomy, believ-

ing that it was necessary to correct the dislocated toe. This had the effect of worsening the plaintiff's condition. The plaintiff was in great pain following this operation and a cast was placed on her foot. When the cast was removed, the plaintiff's toe was raised at a forty-five degree angle and remained in that position. The trial court determined that this was a deformity. The plaintiff's medical expenses totaled $1944.46.

The trial court found that the defendant had failed to satisfy the requisite standard of care in the following areas: (1) the November 3, 1988 failure to anesthetize properly; (2) the November 17, 1988 failure to anesthetize properly; (3) the failure to provide adequate warning to the plaintiff of the procedure and potential complications; (4) the failed operation of November 17, 1988; (5) the advice to the plaintiff to break her own bone; (6) the failure to act in a prompt manner to complete the operation. After determining that the permanency of the deformity would not be considered in assessing damages, the court asked each party to state its opinion of the reasonable value of the case. The defendant assessed the damages to be $6000 to $8000 while the plaintiff stated that $30,000 was an appropriate award. The trial court awarded damages of $90,000. The court specifically stated that it did not consider the permanency of the disability, namely the distortion of the foot, in its evaluation of damages, but that it would include compensation for the pain the plaintiff felt on the bottom of her foot that she will continue to suffer for the rest of her life.

The defendant filed a motion to set aside the judgment arguing that it was excessive, contrary to the evidence and contrary to the findings of fact.[2] The trial court denied this motion stating that its award was appropriate. This appeal followed.

[2] The defendant has claimed on appeal that the judgment of $90,000 is excessive.

The defendant argues that the $90,000 award is excessive given (1) that it is forty-five times greater than the special damages in this case, and (2) that the trial court did not consider the plaintiff's permanent disability in its award. The defendant also contends that the statement of the plaintiff's attorney that he assessed the damages in this case to be $30,000 is an admission that precluded the trial court from awarding damages greater than $30,000.

The trial court refused to set aside its award and its "refusal to do so is entitled to great weight and every reasonable presumption should be given in favor of its correctness." (Internal quotation marks omitted.) *Bruneau* v. *Quick,* 187 Conn. 617, 634, 447 A.2d 742 (1982). "The assessment of damages in personal injury cases is peculiarly within the province of the trier and will only be disturbed when plainly excessive. . . . This is particularly so when the amount is determined in a trial without a jury." (Citations omitted.) *Funk* v. *Bannon,* 148 Conn. 557, 562, 172 A.2d 894 (1961). The test for a determination of whether there was an abuse of discretion by the trial court in denying a motion to set aside the verdict is if the judgment "shocks the sense of justice or the mind is convinced that it is in fact entirely disproportionate to the injury." (Internal quotation marks omitted.) *Champagne* v. *Raybestos-Manhattan, Inc.,* 212 Conn. 509, 557, 562 A.2d 1100 (1989) (where the excessiveness of a jury verdict is reviewed).[3]

Turning to the defendant's first argument, the relation between the amount of special damages and the amount of damages awarded does not control the question of the excessiveness of the award. "The amount of damages in any given case is dependent on the facts

---

[3] We have never before reviewed a trial court's decision on a motion to set aside its own damage award.

and circumstances of that case. Although other cases are not determinative of the proper amount of damages in this case, they do offer some guidance in determining the range of those necessarily flexible limits of fair and reasonable compensation by which the amount of the verdict must be tested." (Internal quotation marks omitted.) *Wochek* v. *Foley,* 193 Conn. 582, 587, 477 A.2d 1015 (1984); see *Dunstan* v. *Round Hill Dairy, Inc.,* 128 Conn. 300, 302–303, 22 A.2d 631 (1941).

In *Bruneau* v. *Quick,* supra, a jury determined that the defendant podiatrist was guilty of malpractice and awarded $61,000 to the plaintiff, $1694 of which constituted special damages. Our Supreme Court determined that the verdict was not excessive given that the plaintiff, who was expected to live another 18.1 years, claimed damages that included physical and mental pain and suffering and an impairment in her ability to enjoy life. Id., 635. The court explained that "[t]he fact that the special damages are only $1694 is not critical in assessing the claim of excessiveness. The jury saw and heard expert witnesses produced by both parties. They saw and heard the defendant." Id., 636. Our Supreme Court determined that the trial court had not abused its discretion in refusing to set aside the verdict as excessive.

The fact, therefore, that the damage award is forty-five times the amount of the special damages is not dispositive of this case. We defer more to a trial court's award than to a jury's verdict. *Funk* v. *Bannon,* supra. The trial court heard expert opinions on the propriety of the defendant's actions and the effect of Krompinger's care on the plaintiff. It also heard the testimony of the plaintiff and the defendant. The trial court determined, based on the malpractice of the defendant and the extent of the plaintiff's pain and suffering, that a $90,000 award was appropriate.

Furthermore, the fact that the trial court did not consider the permanent disability of the plaintiff's foot does not render this award excessive because the trial court considered the permanency of the pain the plaintiff, who was sixty-one years old at the time of trial, would endure for the rest of her life. In reaching the issue of the permanency of the disability as it affects damages, the trial court stated: "I see [this case] as two distinct malpractice procedures. Dr. Krompinger is not before me. So, I am prepared at this time to assign damages to this particular case. . . . I think that, in my opinion, the damages go up to and include the second admission to the hospital, everything right up until the fact that there is a disability. A disability being the toe that turns laterally or, as I have seen it and viewed it here. That, I think, is a permanent condition that does not flow from the negligence of Dr. Wetherbee.

"Now, that's not to say that this court doesn't feel that some of the permanent disability suffered by the plaintiff, Mrs. Collins—the pain in her foot, the discomfort she feels across the bottom of her foot—I think the better evidence, the more believable evidence, the more credible evidence, does say that some of that is attributable to the actions of Dr. Wetherbee."[4]

Thus, the permanent disfigurement of the toe was distinguished from the pain the plaintiff suffers that prevents her from enjoying activities such as tennis and walking not only presently but also in the future.[5] The

[4] After announcing the damage award, the trial court stated: "And I have not considered the permanency. What I mean by the permanency, I have not considered the distortion of the foot."

[5] The trial court reiterated its position when it denied the motion to set aside the award. At that hearing, the court stated: "I realize that my figure on that case was substantially more than was asked for. I heard the case. I evaluated the case. I don't believe that cases are evaluated on five times, ten times, twenty times, forty-five times the specials. Never been my feeling that pain and suffering is measured by how much the doctor bills are or the medical bills. I took the case and evaluated it based upon

trial court explicitly stated that $55,000 of the award compensated the victim for the defendant's malpractice, and the pain and anguish she suffered when she was forced to wear a cast for a total of nine weeks.[6] The remainder was not expressly linked to specific injuries. Given the trial court's finding, however, that this sixty-one year old plaintiff will suffer from sharp pain on the bottom of her foot for the rest of her life, this award is not excessive.

Relying on our Supreme Court's opinion in *Expressway Associates II* v. *Friendly Ice Cream Corporation of Connecticut,* 218 Conn. 474, 590 A.2d 431 (1991), the defendant finally argues that the statement by plaintiff's counsel that "$30,000 in this case is not unreasonable" was an admission that precludes the trial court from awarding damages greater than $30,000. *Expressway Associates II* involved an action seeking injunctive relief and damages for the defendant's interference with a designated right-of-way. The trial court determined that because the claimed right-of-way was con-

. . . the factual situation that did occur. I will acknowledge again that I don't find Dr. Wetherbee responsible for the permanent disability that has resulted from the second operation, which I think was . . . not a continuing, but a second malpractice procedure. My opinion of value was based upon the procedure that was done, the incomplete procedure, the pain and suffering that this woman went through over a period of time, the operation itself, the failure of the novocaine, the drilling of the drill through the foot in the doctor's office, her perceiving the same, the doctor letting this woman walk out of his office, bandaging it up, telling her it wasn't a complete fracture, to break the fracture herself, her pain and suffering over the holiday, so much so that she took the cast off that had been put on even though the doctor told her to go to the hospital and not let anyone cast it. I think the case has the value that I put on it and I don't have any questions about it. If the Appellate Court feels differently, fine."

[6] The court stated in announcing its judgment: "I think that the following damages are awarded. I was awarding for the operation itself, the drilling of her foot without having proper anesthesia, $25,000. For the swollen foot that went down, the casting, took the cast off Thanksgiving Day, $15,000. And then for the—she had nine weeks in the cast, $15,000. And for the—I awarded a total of $90,000."

tingent on the plaintiff's giving the defendant notice that it was prepared to construct a building on the dominant estate served by the right-of-way, irreparable harm had not been shown. Id., 475. This court reversed the trial court's decision and held that the plaintiff had a present right-of-way over the area and directed the trial court to grant injunctive relief and to hold a hearing on damages. *Expressway Associates II* v. *Friendly Ice Cream Corporation of Connecticut,* 22 Conn. App. 124, 576 A.2d 575 (1990), rev'd in part, 218 Conn. 474, 590 A.2d 431 (1991). Our Supreme Court reversed this court's decision after finding that the case could not properly be remanded for a hearing on damages because not only was no evidence of damages presented, but in closing arguments the plaintiff's counsel "in emphasizing its need for an injunction, stated that '[t]here's no civil suit that can be brought at the moment, that I can think of anyway, to claim damages because there *aren't any damages,* they're speculative.' " (Emphasis in original.) *Expressway Associates II* v. *Friendly Ice Cream Corporation of Connecticut,* supra, 218 Conn. 478. Our Supreme Court concluded that "[t]he plaintiff was in effect seeking as its sole remedy an injunction. There is no basis in its claims or in the facts proven which would justify a remand of the case for a retrial of issues involved in a claim for damages." (Internal quotation marks omitted.) Id., quoting *E. M. Loew's Enterprises, Inc.* v. *International Alliance,* 127 Conn. 415, 421–22, 17 A.2d 525 (1941).

The plaintiff here is seeking damages, not injunctive relief, and she presented evidence of those damages, including her own testimony concerning the agony she experienced during and following the operations. *Expressway Associates II* involved an admission by the plaintiff that there were no damages at all. Here, the plaintiff's attorney merely gave the trial court his opinion of a reasonable award for this case. Counsel did not

state that the damages were speculative, or that there were no damages at all. He stated only that $30,000 was not unreasonable, which does not necessarily suggest that a larger amount would be unreasonable. Counsel's statement does not bind the trial court because " '[t]he amount of the award is a matter within the province of the trier of the facts.' *Gorczyca* v. *New York, N.H. & H. R. Co.,* 141 Conn. 701, 703, 109 A.2d 589 (1954). See *Vandersluis* v. *Weil,* 176 Conn. 353, 357, 407 A.2d 982 (1978); *Gondek* v. *Pliska,* 135 Conn. 610, 617, 67 A.2d 552 (1949)." *Seals* v. *Hickey,* 186 Conn. 337, 352, 441 A.2d 604 (1982).

We also note that General Statutes § 52-216b (a) specifically provides that counsel for either party in a personal injury suit may state to the trial court its opinion of the value of the case.[7] In subsection (b), the statute states that in cases tried to a jury the court must instruct the jury that these sums are not evidence and that it is the jury's function to compute the proper amount of damages a case warrants. In nonjury personal injury actions such as this, counsel's assessment of the reasonable damages constitutes an argument or opinion, and does not restrict the trial court's discretion to assess damages.

Under these facts, the trial court did not abuse its discretion in denying the motion to set aside the judg-

[7] General Statutes § 52-216b provides: "(a) In any civil action to recover damages resulting from personal injury or wrongful death, counsel for any party to the action shall be entitled to specifically articulate to the trier of fact during closing arguments, in lump sums or by mathematical formulae, the amount of past and future economic and noneconomic damages claimed to be recoverable.

"(b) Whenever, in a jury trial, specific monetary sums or mathematical formulae are articulated during closing arguments as provided for in subsection (a) of this section, the trial court shall instruct the jury that the sums or mathematical formulae articulated are not evidence but only arguments and that the determination of the amount of damages to be awarded, if any, is solely the jury's function."

ment because the damage award does not shock the sense of justice and we are not convinced that the award is entirely disproportionate to the injury.

The judgment is affirmed.

In this opinion the other judges concurred.