STATE OF CONNECTICUT *v.* NATHANIEL NELSON
(14946)

Dupont, C. J., and Foti and Healey, Js.

Argued December 13, 1996—officially released February 11, 1997

*Michael J. Lefebvre,* for the appellant (defendant).

*Ronald G. Weller,* assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *John H. Maloney,* supervisory assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of rioting at a correctional institution in violation of General Statutes § 53a-179b.[1] He was found not guilty on a count of assault of a department of correction employee in violation of General Statutes § 53a-167c (a) (1).[2] On appeal,

[1] General Statutes § 53a-179b (a) provides: "A person is guilty of rioting at a correctional institution when he incites, instigates, organizes, connives at, causes, aids, abets, assists or takes part in any disorder, disturbance, strike, riot or other organized disobedience to the rules and regulations of such institution."

[2] General Statutes § 53a-167c (a) provides in pertinent part: "A person is guilty of assault of a peace officer, fireman, employee of an emergency medical service organization, emergency room physician or nurse, employee of the Department of Correction, employee or member of the Board of Parole or probation officer when, with intent to prevent a reasonably identifiable peace officer, fireman or employee of an emergency medical service organization, as defined in section 53a-3, emergency room physician or nurse, employee of the Department of Correction, employee or member of the Board of Parole or probation officer from performing his duty, and

the defendant claims that the trial court improperly denied his request to charge the jury that an adverse inference could be drawn because of the state's failure to produce a witness at trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On November 23, 1992, a riot took place at the Enfield medium security prison. A correction officer may have incited the riot by improperly challenging an inmate to fight.[3] At some time during the fight, the correction officer pressed his body alarm indicating to other correctional personnel that he was in danger of physical harm. In response to this alarms, Lieutenant Ernest Nemath arrived and was told by the officer who had signaled the alarm that the inmate had assaulted him. The officer was taken for medical attention to Building A and the inmate was placed into segregation in Building A. Thereafter, between fifty and 100 inmates gathered in front of Building A demanding that the inmate be removed from segregation. At that time, Correction Officers Norman Rodriguez and George Nosaluk responded to the scene. The defendant, an inmate serving a sentence for a felony murder conviction, was one of the inmates gathered there. He told Nemath that he wanted the inmate removed from segregation. He was told that there would be an investigation in the morning. The defendant then said: "So this is the way you want it . . . . [W]ell, it's on, I guess." He was loud and commanding in his actions. The defendant and the inmates then left.

During the next forty-five minutes, groups of inmates, some carrying weapons, destroyed a surveillance cam-

---

while such peace officer, fireman, employee, physician, nurse, member or probation officer is acting in the performance of his duties, (1) he causes physical injury to such peace officer, fireman, employee, physician, nurse, member or probation officer . . . ."

[3] The correction officer was subsequently fired from his position because of this conduct.

era, looted the commissary, set fires, broke lighting fixtures and beat at least one guard. The inmates wore hoods, towels and pillowcases covering their faces, making their identification difficult.

During the riot, several inmates jumped Rodriguez and beat and kicked him, causing him to sustain three broken ribs, a broken nose and a traumatic brain injury. Nosaluk rushed to the aid of Rodriguez. As he began pulling inmates off Rodriguez, he grabbed one, whom he had seen kicking and punching the now unconscious Rodriguez, and saw his face, recognizing that inmate as the defendant. Nosaluk attempted to drag Rodriguez to safety, but was himself attacked and hit by someone swinging a sock containing a lock. Nosaluk could not identify any other inmates attacking Rodriguez. Rodriguez could not identify any of his attackers and remembered nothing of the attack.

The following facts are relevant to the defendant's claim on appeal. After the defendant and the others had left Building A, Nosaluk and his partner, Correction Officer Michael Youman, were told by Nemath to check the prison yard. Upon seeing a group attacking Rodriguez, Nosaluk ran to assist Rodriguez, leaving Youman behind. According to Nosaluk, Youman would not have seen what or whom Nosaluk had seen because he was behind Nosaluk.

At trial, in a hearing conducted in the absence of the jury, the trial court determined that Youman was on vacation in Florida, and that he would be returning in five days. A report submitted by Youman indicated that as he approached the Rodriguez assault, he was chased by a group of inmates. He ran into a building and locked himself in with other corrections officers. Nowhere in the report did he indicate that he could identify anyone involved in the riot.

The defendant claims that the trial court should have instructed, pursuant to *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 165 A.2d 598 (1960), in accordance with his request to charge.[4] He does not challenge the sufficiency of the evidence for the jury's finding of guilt on the charge of rioting at a correctional institution.

---

[4] The defendant's request to charge is as follows: "The defendant in the above entitled matter hereby moves that the court include the following in it's instructions to the jury:

"You will recall that in final argument the defendant asked you to infer, from the fact that Youman was not called as a witness, that his testimony would have been unfavorable to the state. I will now instruct you on the circumstances under which you may, or may not, draw such an inference.

"The failure of a party to produce a witness who is within his power to produce and who would naturally have been produced by him, permits the inference that the evidence by the witness would be unfavorable to the party's case. I emphasize to you, first, that this adverse inference—this inference that the person, if called as a witness, would have given unfavorable evidence—is a permissive inference. That is, you may draw the inference, but you are not required to, depending on whether you think it is a reasonable and logical inference. The party who wants you to draw this inference—in this case the defendant—must show that he is entitled to it.

"There are two requirements which you must find are met before you may draw this unfavorable inference against the state in this case. I will outline these requirements for you in a moment. First, however, you must know that whether both of these requirements have been met are factual questions which you must first determine before you may draw this unfavorable inference. That is, you must first determine that both of these requirements have been established. If you determine that either one of the requirements has not been established, you should disregard the request to draw an unfavorable inference. If you determine that both the requirements have been established, you may draw the unfavorable inference if you think it is a reasonable and logical inference.

"The first requirement is that the witness, Youman, was available. Whether a potential witness is available, within the meaning of the rule, does not mean merely whether the witness was, during the course of the trial, within this state and therefore able to be subpoenaed to come into court and testify. A witness who is within this state at the time of trial, and whose location and identity are known to the party, is of course available. But even a witness outside the state but not in a difficult place to locate or remote from the place of trial may be considered to be available, if the facts and circumstances indicate reasonably to you that the party could have produced him. Furthermore, the failure of a party to call as a witness a person who is available to both parties does not provide the basis for an unfavorable inference. Whether a party is equally available to both parties does not mean merely whether he is accessible by a subpoena from both parties. It involves

The trial court ruled that, although Youman was available, the defendant's request to charge was deficient. The trial court denied the request to charge, but allowed the defendant, in closing argument, to point out that Youman had not testified for the state.

The state argues that we should not review the defendant's claim in that his request to charge fails to comply with Practice Book § 852[5] because the request did not contain any citation of authority and, moreover, failed to set forth any facts that would justify such a

the consideration of many factors, such as one party's superior means of knowing of the existence and testimony of the witness and of the testimony that might be expected of him. You must, in determining whether a party is equally available to both parties, take into account all the facts and circumstances bearing on the situation of the witness with relation to the two parties.

"The second requirement is that Youman was a witness whom the state would naturally produce. This means that he is someone known to the state and who, because of his relationship to that party or to the issues in the case, or to both, could reasonably be expected to have particular or superior information material to the case which the party would produce if that information were favorable. If the likely subject matter of the testimony of the absent witness was so related to the whole proof in the case that one of the parties, and not the other, would be expected to produce him, an inference would be justified that his testimony, if he had been produced as a witness, would be unfavorable to that party. The state is not required, however, to call every witness who might be able to give some evidence about the crime charged. A possible witness, whose testimony is for any reason comparatively unimportant, cumulative or inferior to what has been offered, should not be called, on the general ground of expense and inconvenience; and a party who does not call such a witness should not be penalized by having an adverse inference drawn against him.

"As I said before, whether the defendant has met the two requirements for the drawing of that inference, and, if those requirements have been met, whether you think it is reasonable and logical to draw that inference, are factual questions for you to determine."

[5] Practice Book § 852 provides: "An appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of exception. The exception shall be taken out of the hearing of the jury."

request.[6] Should we review this claim, the state claims that Youman was not a witness who would naturally be produced by the state and, therefore, the requested instruction was not proper. In the alternative, the state contends that if we conclude that the trial court should have instructed as requested, its failure to do so was harmless error.

We conclude that it is unnecessary for us to determine whether the trial court's failure to give the requested charge was improper. If Youman's testimony was relevant, it was as to not having seen the defendant involved in the assault on Rodriguez, which is not an element of the crime of rioting at a correctional institution.

"In order for a defendant to be found guilty of rioting at a correctional institution, he must plan or lead the disturbance, or take part in the disturbance at the correctional facility." *State* v. *Rivera*, 30 Conn. App. 224, 232, 619 A.2d 1146, cert. denied, 225 Conn. 913, 623 A.2d 1024 (1993). There are nine actions described as violations of § 53a-179b, whether as leader, planner or follower. *State* v. *Roque*, 190 Conn. 143, 152–53, 460 A.2d 26 (1983). The nine verbs set out in § 53a-179b, "incites, investigates, organizes, connives at, causes, aids, abets, assists or takes part in," are not nine separate statutorily proscribed methods of violating this statute, but "are verbs 'pertaining to the bringing about'; see *State* v. *Pascucci*, [164 Conn. 69, 71, 316 A.2d 750 (1972)]; of any occurrence, spontaneous or organized, under the statute." *State* v. *Roque*, supra, 153. Moreover, the offense of rioting at a correctional institution does not require any particular scienter; it is not a specific intent crime. *State* v. *Nixon*, 32 Conn. App. 224, 250,

---

[6] During oral argument, the state withdrew its claim that if Youman were available to the state, he was equally available to the defendant, and therefore a *Secondino* charge was not warranted. *Hines* v. *St. Vincent's Medical Center*, 232 Conn. 632, 637 n.8, 657 A.2d 578 (1995) (mere fact that witness is equally available to both parties does not preclude *Secondino* charge).

630 A.2d 74 (1993), aff'd, 231 Conn. 545, 651 A.2d 1264 (1995).

Even if we determined that there was substantial compliance with Practice Book § 852, that Youman was a witness that the state would naturally have produced because he was present in the yard when Rodriguez was assaulted, and that the defendant was entitled to a missing witness charge, such a determination would be irrelevant. The requested charge could apply only to the crime of assault of a department of correction employee. The defendant was acquitted of that charge. It is, therefore, unnecessary for us to reach the *Secondino* issue, because it is not relevant to the appeal from the judgment of conviction of rioting at a correctional institution.

The judgment is affirmed.

In this opinion the other judges concurred.