## STATE OF CONNECTICUT *v.* LEONORA RYAN
## (AC 15840)

Landau, Spear and Daly, Js.

Argued November 7, 1997—officially released March 17, 1998

---

*Norman A. Pattis*, special public defender, with whom, on the brief, was *John R. Williams*, special public defender, for the appellant (defendant).

*Mitchell S. Brody*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *David P. Gold*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

SPEAR, J. The defendant, Leonora Ryan, appeals from the judgment of conviction, rendered after a jury trial, of inciting injury to persons in violation of General Statutes § 53a-179a.[1] The defendant claims that (1) § 53a-179a is both vague on its face in violation of the due process clause of the fourteenth amendment to the United States constitution and overbroad in violation of the first amendment to the United States constitution and (2) the trial court abused its discretion by improperly refusing to admit into evidence a police informant's criminal history. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In 1984, the defendant married Ronald Rubin. The couple had twins in 1986 and divorced in 1990. The defendant was awarded physical custody of the twins

---

[1] General Statutes § 53a-179a (a) provides: "A person is guilty of inciting injury to persons or property when, in public or private, orally, in writing, in printing or in any other manner, he advocates, encourages, justifies, praises, incites or solicits the unlawful burning, injury to or destruction of any public or private property or advocates, encourages, justifies, praises, incites or solicits any assault upon any organization of the armed forces of the United States, as defined by section 27-103, or of this state, as defined by section 27-2, or the police force of this or any other state or upon any officer or member thereof or the organized police or fire departments of any municipality or any officer or member thereof, or the killing or injuring of any class or body of persons, or of any individual."

and Rubin received visitation privileges. In the fall of 1990, the defendant remarried and moved with the twins and her new husband to Hamden. During 1991, Rubin lived in Waterbury with a roommate, Ray Sturm. In October, 1991, Rubin signed an agreement whereby his children would not visit him at his Waterbury apartment because of suspicions that Sturm had sexually abused one of the twins.

Approximately six months prior to her arrest, the defendant confided in her friend, Mary M. Gleason, her belief that Rubin was responsible for the sexual abuse of the twins. The defendant also told Gleason that she disliked Rubin and would have him killed if only she knew a "hit man." The defendant also expressed her frustration that the police were not taking her complaints seriously. At the time, Gleason was living with Edward Marco, a police informant who had a lengthy criminal record.

On December 21, 1992, Marco furnished information to Officer Mark Ciarciello of the Branford police department that resulted in an investigation, with Ciarciello posing as a hit man. After supplying Ciarciello with the defendant's telephone number, Marco was instructed to inform the defendant that she would be contacted by Ciarciello. On December 22, 1992, Ciarciello visited the defendant's home and received an envelope from her that contained $100. The defendant confided in Ciarciello that she had repeatedly attempted to oust Rubin from her and her children's lives through legal channels, but had been unsuccessful. The defendant also confided to Ciarciello her belief that Rubin's roommate had sexually abused her son, and that Rubin was "torturing" the twins and "messing up their heads." The defendant stated that she could not "handle it anymore" and "wanted [Rubin] gone, probably after the holidays." When Ciarciello indicated that he would need an advance on his $1000 fee, the defendant responded that

Marco was planning to lend her money toward the payment of Ciarciello's fee. The defendant then confirmed specific information regarding Rubin, including his home and work addresses, home telephone number, physical appearance, work schedule, and the make, color and partial license plate number of his car.

On December 30, 1993, Ciarciello again visited the defendant's home and received additional money toward the payment of his fee. The defendant then indicated that she wanted the "hit" to look like an "accident" or "a drug deal gone bad." She did not want the defendant to "disappear" because she wanted her children, the beneficiaries of Rubin's life insurance policy, to receive the life insurance proceeds immediately.

The jury found the defendant guilty on the count of inciting injury to persons and property, but acquitted her of the count of attempted murder in violation of §§ 53a-8, 53a-49a (2) and 53a-54a. This appeal followed.[2]

I

A

The defendant first claims that General Statutes § 53a-179a is vague on its face, in violation of the fourteenth amendment to the federal constitution.[3] Specifically, the defendant asserts that the language in § 53a-179a that makes it a felony when one "advocates, encourages, justifies, praises, incites or solicits . . . the killing or injuring of any class or body of persons,

_____

[2] The defendant seeks review of her unpreserved constitutional claims under the guidelines set out in *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). The state concedes that the claims are reviewable, but asserts that they lack merit. To prevail, the defendant now "bears the responsibility of demonstrating that [her] claim is indeed a violation of a fundamental constitutional right." Id., 240.

[3] The fourteenth amendment to the United States constitution provides in relevant part: "No state shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

or of any individual" is vague on its face because it "lacks a common core meaning" and sweeps so broadly that it includes speech protected by the first amendment to the United States constitution.[4] We affirm the judgment of the trial court.

The defendant contends that the language of § 53a-179a is unconstitutionally vague because it allows a person to be prosecuted for a mere expression of opinion without any criminal intent or criminal act. By way of example, she posits that persons who simply are in favor of the death penalty could be prosecuted under the "praises" and "justifies" language in the statute, notwithstanding the absence of any intent to incite or cause harm. The defendant maintains that this interpretation of § 53a-179a would proscribe constitutionally protected speech and, therefore, render the statute unconstitutionally vague on its face. We disagree because judicial gloss makes it clear that the statute requires an intent to cause injury in addition to the proscribed language.

Preliminarily, we restate certain principles, enunciated by our Supreme Court, that guide our analysis. Pursuant to our federal and state constitutions, due process of law requires that a penal statute be sufficiently definite to warn a person of conduct that must be avoided. Where the terms of a statute are " 'so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application,' " an essential aspect of due process of law is violated. *State* v. *Dyson*, 238 Conn. 784, 796, 680 A.2d 1306 (1996). A vague and indefinite rule or standard is no rule or standard at all. *Seals* v. *Hickey*, 186 Conn. 337, 342, 441 A.2d 604 (1982). To prevail on a facial vagueness

---

[4] The first amendment to the United States constitution provides in relevant part: "Congress shall make no law . . . abridging the freedom of speech, or of the press . . . ."

challenge, the defendant must show that the statute has no core meaning. If at least one application is not vague, the challenge cannot succeed. Additionally, the defendant's burden is made more difficult by the strong presumption favoring the constitutionality of statutes. *State* v. *Dyson*, supra, 797; see also *State* v. *Indrisano*, 228 Conn. 795, 805, 640 A.2d 986 (1994).

Vague laws endanger first amendment rights because they may cause citizens to avoid constitutionally protected conduct for fear of incurring criminal prosecution. Where a statute is attacked as void for vagueness, and no first amendment rights are implicated, the constitutionality of the statute is determined by its applicability to the particular facts at issue. Because of the chilling effect that vague statutes can have on first amendment rights, a defendant may mount a vagueness challenge to the validity of a statute in marginal, hypothetical situations, even though the defendant's own conduct clearly falls within the statute's proscriptions. *State* v. *Proto*, 203 Conn. 682, 696–97, 526 A.2d 1297 (1987).

Our Supreme Court has recognized that vague statutes fail to give fair warning to persons who may be affected as to what conduct is prohibited. A statute should be reasonably specific and direct so that a person of ordinary intelligence has a reasonable opportunity to govern his or her behavior by reference to the words of the statute together with judicial gloss. "Lack of precision, however, is not, in or of itself, offensive to the requirement of due process." *Seals* v. *Hickey*, supra, 186 Conn. 344. "Ambiguity is, unfortunately, a common statutory ailment. A degree of vagueness is endemic in many statutes. . . . If the meaning of a statute can fairly be ascertained through judicial construction, however, it need not be stricken for vagueness. . . . [A]uthoritative constructions sufficiently illuminating the contours of an otherwise vague

prohibition may be used to remedy the chilling effect of vague statutory language in areas affecting first amendment rights. . . .

"The meaning of unclear statutes affecting first amendment rights may be divined through recognized methods of statutory construction. References to judicial opinions involving the statute, the common law, legal dictionaries, or treatises may be necessary to ascertain a statute's meaning to determine if it gives fair warning." (Citations omitted; internal quotation marks omitted.) *State* v. *Proto*, supra, 203 Conn. 698–99.

In seeking to determine whether § 53a-179a gives fair warning as to what conduct is criminal under the statute, we are persuaded by the well reasoned analysis in *State* v. *Leary*, 41 Conn. Sup. 525, 590 A.2d 494 (1989), rejecting a vagueness and overbreadth challenge to the constitutionality of § 53a-179a. The *Leary* court read into the statute "an implicit requirement that the accused intend to cause injury . . . . Each of the words that the legislature chose to include in the statute clearly connotes the volitional component to accomplish a specific result." Id., 530.

We recognize, as did the *Leary* court, the fundamental principle of statutory construction that penal statutes must be construed strictly in favor of the accused. *State* v. *Whiteman*, 204 Conn. 98, 101, 526 A.2d 869 (1987). Notwithstanding that rule of construction, we are also guided by two oft stated principles. "The party attacking a validly enacted statute . . . bears the heavy burden of proving its unconstitutionality beyond a reasonable doubt and we indulge in every presumption in favor of the statute's constitutionality." *State* v. *Breton*, 212 Conn. 258, 269, 562 A.2d 1060 (1989). Where a statute is challenged as being unconstitutional on its face, the burden is especially heavy. *State* v. *Webb*, 238 Conn. 389, 407, 680 A.2d 147 (1996). Furthermore, "we must,

if possible, put a judicial gloss upon the [terms under challenge] that adopts a definition that saves [them] from . . . facial vagueness and yet construes [them] as narrowly as possible in the defendant's favor." *State* v. *Breton*, supra, 269–70.

In seeking to adopt an interpretation of § 53a-179a that will survive a facial vagueness challenge while being construed as narrowly as possible in favor of the defendant, we also find *Turner* v. *LaBelle*, 251 F. Sup. 443 (D. Conn. 1966), instructive. In *Turner*, the court reviewed and upheld the constitutionality of General Statutes (1958 Rev.) § 53-44[5] (predecessor to § 53a-179a), while acknowledging that "[t]he most vulnerable part of [§ 53-44] is that part which penalizes praising or justifying" because of the claim that it could apply to past acts. Id., 446. In searching for the legislative intent underpinning the statute, the *Turner* court rejected such an interpretation and stated that "[g]enerally it makes sense to ascribe a particular separate meaning to each of a limited number of words used disjunctively in a statute. But where the legislature, out of a desire to assure that no artful semanticist will escape the burden of the statute, employs, indiscriminately, seriatim, a number of similar words, some virtually identical, others differing slightly, the better practice would appear to be to let each help to define the other. Accordingly, we read 'justifies' and 'praises'

---

[5] General Statutes (1958 Rev.) § 53-44, which was amended by 1969 Public Acts, No. 452, § 9, and repealed by 1969 Public Acts, No. 828, § 214, effective October 1, 1971, provided in pertinent part: "Any person who, in public or private, orally, in writing, in printing or in any other manner, advocates, encourages, justifies, praises, incites or solicits the unlawful burning, injury to or destruction of any public or private property or advocates, encourages, justifies, praises, incites or solicits any assault upon any organization of the armed forces of the United States . . . or the killing or injuring of any class or body of persons, or of any individual, shall be fined not more than five thousand dollars or imprisoned not more than ten years or both." The statute was replaced by § 53a-179a in 1971. See 1971 Public Acts, No. 871, § 52.

in the sense of 'encourages', 'advocates', and 'incites.' " Id.[6] We conclude that all of the prohibited verbal acts are saved from vagueness by judicial gloss and the legislature's intent that such acts require an intent to cause injury.

In seeking to apply further judicial gloss to the challenged language of § 53a-179a, we may also look to the published commentary to § 53a-179a. Our Supreme Court has stated that the commentary by the commission to revise the criminal statutes, although "not officially adopted by the General Assembly and . . . not determinative"; State v. Parmalee, 197 Conn. 158, 163 n.7, 496 A.2d 186 (1985); may be relied on "as a guide for determining the intention of the legislature . . . ." Id.; see also State v. Desimone, 241 Conn. 439, 456, 696 A.2d 1235 (1997); State v. Foster, 45 Conn. App. 369, 377–78, 696 A.2d 1003, cert. denied, 243 Conn. 904, 701 A.2d 335 (1997). The published commentary to § 53a-179a further persuades us that intent must necessarily be inferred when construing § 53a-179a. Specifically, the commentary provides that § 53a-179a "replaces and narrows the scope of prior section 53-44.[7] The additional requirement that the advocacy be of 'imminent' dangerous action is compelled by relevant constitutional doctrines of free speech." Commission to Revise the Criminal Statutes, Commentary on the Penal Code (1971), p. 69. The commission's reference to "imminent dangerous action" supports the Leary court's conclusion that intent must be inferred in construing § 53a-179a. Aided by the commentary, we also conclude that

---

[6] Our Supreme Court has stated that "[i]f two or more words are grouped together, it is possible to ascertain the meaning of a particular word by reference to its relationship with other associated words and phrases under the doctrine of noscitur a sociis. 2A J. Sutherland, Statutory Construction (5th Ed. Singer 1992) § 47-16 [pp. 183–84]; State v. Roque, [190 Conn. 143, 152, 460 A.2d 26 (1983)]." State v. Indrisano, supra, 228 Conn. 811.

[7] See footnote 5.

the legislature intended the challenged language to proscribe speech *only* if it supports *imminent* injurious action.

This conclusion is buttressed by applying another principle of statutory construction. "[W]hen the language used [within a statute] is doubtful in meaning, the true meaning may be ascertained by considering it in the light of all its provisions . . . [as well as] its title . . . ." *Hazzard* v. *Gallucci*, 89 Conn. 196, 198, 93 A. 230 (1915); see *Old Saybrook* v. *Public Utilities Commission*, 100 Conn. 322, 328, 124 A. 33 (1924). We are persuaded that the title of § 53a-179a, "Inciting injury to persons or property," clearly illustrates the legislature's intention that the element of intent be incorporated in the meaning of the statute.

In applying first amendment principles, the United States Supreme Court has upheld a statute against first amendment attack by acknowledging that "unlike the advocacy of ideas, advocacy of action may be restricted. *Yates* v. *United States*, 354 U.S. 298, 318, 77 S. Ct. 1064, 1 L. Ed. 2d 1356 (1957); *Keyishian* v. *Board of Regents*, 385 U.S. 589, 87 S. Ct. 675, 17 L. Ed. 2d 629 (1967). Moreover, "it has never been deemed an abridgement of freedom of speech . . . to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." *Cox* v. *Louisiana*, 379 U.S. 536, 555, 85 S. Ct. 453, 13 L. Ed. 2d 471 (1965).

Applying principles of statutory construction in light of the first amendment considerations that we have discussed, we conclude that the defendant's fourteenth amendment challenge to § 53a-179a must fail.

B

The defendant claims in the alternative that even if the language of § 53a-179a is not vague on its face, it

is impermissibly overbroad in violation of the principles of free speech embodied in the first amendment to the United States constitution. We are unpersuaded.

"[T]he doctrines of vagueness and overbreadth are so closely related that [s]ometimes the two are functionally indistinguishable . . . ." (Internal quotation marks omitted.) *State* v. *Proto*, supra, 203 Conn. 706. "The essence of an overbreadth challenge is that a statute that proscribes certain conduct, even though it may have some permissible applications, sweeps within its proscription conduct protected by the first amendment." *State* v. *Rivera*, 30 Conn. App. 224, 229, 619 A.2d 1146 (1993); see also *Secretary of State* v. *J.H. Munson Co.*, 467 U.S. 947, 104 S. Ct. 2839, 81 L. Ed. 2d 786 (1984); *City Council of Los Angeles* v. *Taxpayers for Vincent*, 466 U.S. 789, 104 S. Ct. 2118, 80 L. Ed. 2d 772 (1984). Moreover, "[a] party has standing to raise an overbreadth claim . . . only if there [is] a realistic danger that the statute will significantly compromise recognized First Amendment protections of parties not before the Court . . . ." (Internal quotation marks omitted.) *State* v. *Rivera*, supra, 229–30; see also *State* v. *Proto*, supra, 203 Conn. 682.

We are not convinced by the defendant's hypothetical that merely being a proponent of the death penalty or otherwise engaging in constitutionally protected conduct would be impermissibly swept within the ambit of conduct that is proscribed by the language of § 53a-179a. As in *Proto*, the defendant here claims that the vague words of the statute permit interpretations that would violate first amendment rights. As our Supreme Court did in *Proto*, "we may appropriately apply the narrowing constructions of the relevant [statute] that we adopted in part [I A] to address the [defendant's] overbreadth claims. While these constructions would not save the challenged statutes if they *plainly* proscribed constitutionally protected conduct . . . we conclude that the [statute] in question permissibly

[bears] a construction that renders [it] free from constitutional defects." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State v. Proto*, supra, 203 Conn. 708.

The narrowing construction that we employed in part I A restricts the language of § 53a-179a to proscribe the incitement to injury of persons or property. The United States Supreme Court has held that speech that advocates a "law violation [is protected by the first amendment] except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Brandenburg* v. *Ohio*, 395 U.S. 444, 447, 89 S. Ct. 1827, 23 L. Ed. 2d 430 (1969). We conclude that the defendant's overbreadth challenge under the first amendment to the United States constitution is also without merit.

## II

The defendant next claims that the trial court abused its discretion in refusing to admit certain information into evidence regarding the criminal history and previous drug related arrest of Marco, the police informant. Marco did not testify. It is well settled that "[b]ecause of the latitude we accord trial courts on questions of relevance . . . and [b]ecause of the difficulties inherent in [the process of balancing probative value and prejudicial effect], the trial court's decision . . . will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done." (Internal quotation marks omitted.) *Berry* v. *Loiseau*, 223 Conn. 786, 804, 614 A.2d 414 (1992); *State* v. *Howard*, 187 Conn. 681, 685, 447 A.2d 1167 (1982); *State* v. *McClendon*, 45 Conn. App. 658, 697 A.2d 1143, cert. granted on other grounds, 243 Conn. 943, 704 A.2d 799 (1997).

Our review of the record reveals that there was testimony from several witnesses regarding Marco's criminal history and general untrustworthiness. The trial

court not only made known to the jury the fact that Marco was a paid police informant, but also instructed it that it was permissible to draw a negative inference from the state's failure to call Marco as a witness. In light of the principle that "every reasonable presumption should be given in favor of the trial court's ruling"; (internal quotation marks omitted) *Russell* v. *Dean Witter Reynolds, Inc.*, 200 Conn. 172, 192, 510 A.2d 972 (1986); we conclude that the trial court did not abuse its discretion in declining to admit as evidence Marco's prior drug related arrest and criminal history.[8]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[8] Even if we did find an abuse of discretion by the trial court, the defendant here has failed to carry her burden of showing harm. See *State* v. *Radzvilowicz*, 47 Conn. App., 1, 24, 703 A.2d 767, cert. denied, 243 Conn. 955, 704 A.2d 806 (1997). We are satisfied that the disputed information concerning Marco's previous drug related arrest and his motivations to misrepresent the defendant's intentions to the police was cumulative of other substantial testimony and evidence and would not have affected the jury's verdict even if it had been admitted into evidence.