STATE OF CONNECTICUT *v.* RUBEN SANTIAGO
(AC 14769)

Lavery, Landau and Spear, Js.

---

Argued December 2, 1997—officially released March 10, 1998

*Michael G. Considine,* with whom, on the brief, were *Stanley A. Twardy, Jr.,* and *Keith P. Carroll,* for the appellant (defendant).

*Mitchell S. Brody*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Rosita M. Creamer*, assistant state's attorney, for the appellee (state).

*Opinion*

SPEAR, J. The defendant, Ruben Santiago, appeals from the judgment of conviction, rendered after a jury trial, of conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-48 (a)[1] and 53a-59 (a) (1),[2] rioting at a correctional institution in violation of General Statutes § 53a-179b,[3] and possession of a weapon in a correctional institution in violation of General Statutes § 53a-174a.[4] The defendant claims that the trial court (1) improperly restricted cross-examination of a prosecution witness concerning motive and bias in violation of the defendant's sixth amendment right to confront witnesses,[5] (2) abused its discretion by

[1] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[2] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

[3] General Statutes § 53a-179b (a) provides: "A person is guilty of rioting at a correctional institution when he incites, instigates, organizes, connives at, causes, aids, abets, assists or takes part in any disorder, disturbance, strike, riot or other organized disobedience to the rules and regulations of such institution."

[4] General Statutes § 53a-174a (a) provides: "A person is guilty of possession of a weapon or dangerous instrument in a correctional institution when, being an inmate of such institution, he knowingly makes, conveys from place to place or has in his possession or under his control any firearm, weapon, dangerous instrument, explosive, or any other substance or thing designed to kill, injure or disable."

[5] The sixth amendment to the United States constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."

admitting into evidence irrelevant and highly prejudicial hearsay testimony concerning the defendant's gang affiliation, (3) violated the defendant's due process rights to a fair trial by admitting into evidence various weapons found at the crime scene and by declining to charge the jury on informant testimony, and (4) improperly declined to charge the jury that specific intent was an element of the offense of rioting at a correctional institution. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On September 28, 1990, several inmates at the Enfield medium security correctional facility (Enfield) were observed assembling at a picnic table in the compound. The group, consisting of approximately ten inmates, raced onto the miniature golf course that was located in an open recreational area at the center of the compound. As the charging group of inmates reached the golf course, a fight erupted. A correction officer, Leonard Burke, observed a group of inmates beating the victim. Burke recognized the defendant "[a]s a part of the group that was beating on" the victim. Another inmate, Walter Gouch, saw the defendant put a weapon up his sleeve after stabbing the victim.

As another correction officer, Antonio Cancel, approached the group, the defendant fled and was pursued by Cancel throughout the compound. During the chase, Cancel observed an object resembling a shank[6] in the defendant's hand. Scott Loos, another correction officer who had pursued the defendant, also observed the weapon in the defendant's hand and saw the defendant drop it on the ground. When the officers finally reached the defendant, several inmates encircled the officers and temporarily prevented them from apprehending the defendant. Correction officers and law

[6] A shank was described by one of the state's witnesses as a homemade knife.

enforcement personnel retrieved several items from the compound, among which were an 8.5 inch metallic shank with tape wrapped around its handle, a razor blade wrapped in tape, and a pointed threaded metal rod.

The defendant was found guilty of the charges of conspiracy to commit assault in the first degree, rioting at a correctional institution and possession of a weapon in a correctional institution, and was acquitted of violating General Statutes §§ 53a-8 and 53a-55 (a) (1), first degree manslaughter as an accessory. This appeal followed.

I

The defendant first claims that the trial court improperly restricted the cross-examination of prosecution witness Gouch. Specifically, the defendant contends that the trial court violated his sixth amendment right to confront his accusers by precluding the questioning of Gouch with respect to whether he had received parole in exchange for giving statements to the police concerning the riot and for future testimony.[7] The defendant contends that Gouch's connection to the prosecuting authorities evidenced bias that the defendant should

---

[7] The following is testimony excerpted from the defendant's cross-examination of Gouch:

"[Defendant's Counsel]: And your parole is over now?

"[Gouch]: Long time ago.

"[Defendant's Counsel]: Wasn't your original sentence—was it twelve years?

"[Assistant State's Attorney]: I'm going to object to this, Your Honor.

"[Defendant's Counsel]: Well, he got an early parole—early termination from parole—

"[Assistant State's Attorney]: Counsel's not supposed to be testifying.

"[Defendant's Counsel]: Well, that's, I mean if you do the math—

"The Court: Well, wait a minute, [counsel], the only thing indicated on the sentencing is twelve years.

"[Assistant State's Attorney]: Well, Your Honor, that's not something that is relevant now. It can be, the subject of this was whether he was given anything in exchange for his cooperation.

have been permitted to explore fully on cross-examination. While we agree that the trial court improperly restricted cross-examination on this subject, we conclude that the error was harmless.

Preliminarily, we note that "[i]t is axiomatic that [a] defendant is entitled fairly and fully to confront and to cross-examine the witnesses against him." (Internal quotation marks omitted.) *State* v. *Joyce*, 243 Conn. 282, 307, 705 A.2d 181 (1997). Moreover, "[i]t is true that the scope and extent of cross-examination generally rest within the sound discretion of the trial court. . . . This discretion arises, however, only after the defendant has been permitted cross-examination and impeachment of a witness sufficient to satisfy the sixth amendment. . . . [A]n important function of cross-examination is the exposure [of] a witness' motivation in testifying. . . . Cross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted." (Citations omitted; internal quotation marks omitted.) *State* v. *Joyce*, 45 Conn. App. 390, 397–98, 696 A.2d 993, cert. granted, 243 Conn. 904, 701 A.2d 336 (1997).

In resolving this claim, we are guided by the "well established guidelines for determining whether a defendant's right of cross-examination has been unduly restricted. '[W]e consider the nature of the excluded inquiry, whether the field of inquiry was adequately

"The Court: The answer by Mr. Gouch . . . was no.

"[Defendant's Counsel]: And the inquiry now is that he got a benefit, a different benefit than an early termination parole. Parole seems to be prematurely terminated.

"[Assistant State's Attorney]: Again, Your Honor, this is counsel's testifying.

"The Court: Strike that from the jury's mind, the remarks of counsel.

"[Defendant's Counsel]: I'm just telling you my reasons for asking the question.

"[Assistant State's Attorney]: I don't believe [counsel] was asked.

"The Court: I'll sustain the objection. Move on [counsel]."

covered by other questions that were allowed, and the overall quality of the cross-examination viewed in relation to the issues actually litigated at trial.' *State* v. *Santiago*, 224 Conn. 325, 331, 618 A.2d 32 (1992), quoting *State* v. *Roma*, 199 Conn. 110, 116, 505 A.2d 717 (1986)." *State* v. *Lee*, 30 Conn. App. 470, 486, 620 A.2d 1303 (1993), aff'd, 229 Conn. 60, 640 A.2d 553 (1994). In considering the nature of the excluded inquiry in the present case concerning Gouch's relationship to the prosecuting authorities, we are guided by our Supreme Court's holding that "[i]t is always relevant to the issue of bias that a witness may have a relationship to the prosecuting authorities in a criminal case." *State* v. *Santiago*, supra, 332. The defendant does not claim that the parole authorities are part of the prosecutorial apparatus, but he does claim that the trial court improperly restricted the cross-examination of Gouch before defense counsel could adequately establish the connection between Gouch and the prosecution.

While we find that the trial court's restriction of the cross-examination of Gouch was improper, we also find that the error was harmless. Specifically, we note that "[a]lthough the outright denial of a defendant's opportunity to impeach a witness for motive, bias and interest implicates the constitutional protection of the confrontation clause, such a denial is subject to harmless error analysis." *State* v. *Colton*, 227 Conn. 231, 253, 630 A.2d 577 (1993), on appeal after remand, 234 Conn. 683, 663 A.2d 339 (1995), cert. denied, 516 U.S. 1140, 116 S. Ct. 972, 133 L. Ed. 2d 892 (1996), citing *United States* v. *Anderson*, 881 F.2d 1128, 1139 (D.C. Cir. 1989). "The correct inquiry for identifying harmless constitutional error is to ask whether, 'assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt.'" *State* v. *Santiago*, supra, 224 Conn. 333, quoting *Delaware* v. *Van Arsdall*, 475 U.S. 673, 684, 106 S. Ct. 1431, 89 L.

Ed. 2d 674 (1986); *State* v. *Oehman*, 212 Conn. 325, 332, 562 A.2d 493 (1989); see also *State* v. *Francis*, 228 Conn. 118, 124, 635 A.2d 762 (1993). "Whether such error is harmless in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." (Internal quotation marks omitted.) *State* v. *Santiago*, supra, 333.

In the present case, the defendant contends that Gouch was "the state's only witness who could provide direct evidence of [the defendant's] active participation in the assault on [the victim]." Our examination of the record reveals that, in addition to the testimony of Gouch, an inmate, there was testimony from several correction officers who directly observed and testified to the facts that the defendant was among the group of assaulting inmates and that, during a chase by correction officers throughout the yard, he had a long, pointed, sharp-edged metal object in his hand. Additionally, a correction officer testified that he observed the defendant drop the object, which appeared to be a shank, to the ground during the chase. We are persuaded that Gouch's testimony was merely cumulative of myriad other evidence in the record that constituted a strong case against the defendant for conspiracy to commit first degree assault.

We note also that Gouch's credibility was effectively attacked during cross-examination when Gouch admitted that he had lied in claiming that he had seen the defendant throw down a knife after the victim was stabbed. Gouch's credibility was also impeached by evidence of his prior felony convictions. Most telling, however, was the jury's acquittal of the defendant on the manslaughter count, where Gouch was the only

witness who claimed to have actually seen the defendant repeatedly stab the victim. Accordingly, we find that the trial court's improper restriction of the cross-examination of Gouch was harmless beyond a reasonable doubt.

## II

The defendant next claims that the trial court abused its discretion by admitting into evidence prejudicial and irrelevant hearsay testimony that the defendant was affiliated with the Latin Kings. We decline to review the prejudice and relevancy claims as they were not made at trial and the hearsay claim was not preserved.

The defendant claims that evidence that he was affiliated with the Latin Kings should not have been admitted because of its highly prejudicial impact.[8] The defendant, however, made no claim of prejudice to the trial court. His two earlier successful objections were made on the ground of hearsay, not prejudice. The record reveals that "again" was the only word spoken by defense counsel after the subject question and answer. Given this context, it is clear that the court allowed the answer

---

[8] The following is the relevant trial testimony that was elicited during the state's questioning of Officer Nelson Rodriguez:

"Q. Did you transfer out of the institution any[one] besides the three Latin Locals that you already indicated?

"A. Yes we did.

"Q. Was the defendant among those?

"A. I believe Mr. Santiago was transferred later.

"Q. Why?

"A. Because of his affiliation with the incident.

"Q. And he was affiliated with either group?

"A. Yes, he was.

"Q. And with which group?

"A. Latin Kings.

"[Defendant's Counsel]: Again.

"[Assistant State's Attorney]: At this point, I claim it to explain his actions, not for the truth of the matter.

"The Court: It's his mental state. He can say why he did something.

"[Defendant's Counsel]: All right, all right."

to stand because it was not offered for the truth of the statement, but rather to explain the witness' actions. The prejudice and relevancy claims that the defendant now raises on appeal were never presented to the trial court. We will not, therefore, consider them on appeal. See Practice Book § 4061; *In re Michael A.*, 47 Conn. App. 105, 110, 703 A.2d 1146 (1997); *Biggs* v. *Warden*, 26 Conn. App. 52, 57, 597 A.2d 839, cert. denied, 221 Conn. 902, 600 A.2d 1029 (1991).

With respect to the hearsay claim, the defendant's counsel said, "All right, all right," after the court stated that it was allowing the answer to stand in view of the state's claim that the statement was not offered for its truthfulness. The state's two earlier attempts to adduce evidence regarding the Latin Kings were not so limited.[9]

---

[9] The following is the relevant trial testimony regarding the state's attempt to adduce evidence regarding the Latin Kings:

"Q. And with respect [to] Luis Rivera, the deceased, and the other inmate who was injured, I believe you said his name was Rodriguez also?

"A. Yes.

"Q. Do you know what, if they had any affiliation with any group?

"A. My understanding [is that] they were affiliated with the Latin Locals.

"Q. And with respect to the defendant and [two other inmates] who were taken into custody at the same time as he, were you aware of their affiliation?

"A. At the time no, but after we [began] taking [them into] custody it was brought to my attention that they also were part of the Latin Kings.

"[Defendant's Counsel]: Wait a minute, I'm going to object to that answer as at least possibly a hearsay declaration. I don't know what the source of his information was.

"The Court: You want to claim the question?

"[Assistant State's Attorney]: Well, I can get at it another way.

"The Court: All right.

"Q. Was part of your duties to—

"[Defendant's Counsel]: Well, may that be stricken, then?

"The Court: It will be stricken.

"Q.—to investigate what might have motivated this disturbance?

"A. I didn't hear your first part.

"Q. Was part of your job to determine what might have motivated this disturbance?

"A. Yes.

"Q. And you mentioned that some of the individuals involved were affiliated with the Latin Kings, is that correct?

Hearsay can be admitted to explain a person's actions. See *O'Shea* v. *Mignone,* 35 Conn. App. 828, 833, 647 A.2d 37, cert. denied, 231 Conn. 938, 651 A.2d 263 (1994); *State* v. *Robinson,* 213 Conn. 243, 257–58, 567 A.2d 1173 (1989). The record clearly shows that the defendant acquiesced in what appears to have been a correct ruling by the court. We note also that evidence of the defendant's affiliation with the Latin Kings was admitted in the defense case without objection.[10] We therefore find no merit in this claim.

## III

The defendant next claims that the trial court violated his due process right to a fair trial by admitting into

"A. Yes.

"Q. And I believe you said that the fifteen who remained in the yard at the, until the very end were, Latin Kings?

"A. Uh huh, yes.

"Q. You've earlier mentioned a group that was preventing your staff from taking [the defendant] into custody?

"A. Yes.

"Q. Were any of those and the fifteen who remained, the holdouts, the same people?

"A. Were they the same people as far as—as the sense in, well, when I first took the three individuals off for questioning—

"Q. Now by the three you mean the defendant, [and two other inmates taken into custody]?

"A. Right.

"Q. All right?

"A. We took them into A building. I didn't find out until after the fact that they were Latin Kings through our security risk group coordinator.

"[Defendant's Counsel]: That's the hearsay declaration that I was objecting to at first.

"Q. Did you have to take any action with respect to—

"[Defendant's Counsel]: Wait, I ask that that response be stricken as well.

"The Court: You claim the question and the answer?

"[Assistant State's Attorney]: I'm not sure the answer was responsive to, or not all of the answer was responsive.

"The Court: All right, I'll instruct the jury to strike the answer. Do not rely on that as evidence provided."

[10] In the defense's case, Detective Charles Revoir testified during cross-examination that the defendant stated that he was a member of the Latin Kings. This statement was admitted for its truthfulness, unlike the evidence

evidence the shank, razor blade and metal rod. The defendant contends that these items were highly prejudicial, inflammatory, and lacked relevance because the state did not attempt to link them to either the defendant or any other inmate who used a weapon during the riot. We disagree.

We first address the defendant's contention that this claim is of constitutional magnitude. This claim is solely of an evidentiary nature. It is well settled that "[t]he trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *Coleman*, 241 Conn. 784, 789, 699 A.2d 91 (1997).

With respect to the defendant's contention that the evidence was irrelevant, we have stated that "[r]elevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence *tend* to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative." (Emphasis in original; internal quotation marks omitted.) Id., 788–89.

The state contends that the shank, razor blade and metal rod were admitted as evidence of a disturbance involving weapons at Enfield. "In order for a defendant

of Latin King affiliation that was introduced in the state's case to show motivation. The defendant's claim that an objection would have been in vain because evidence of gang affiliation had already been admitted is, therefore, without merit.

to be found guilty of rioting at a correctional institution, he must plan or lead the disturbance, or take part in the disturbance at the correctional facility." *State* v. *Rivera*, 30 Conn. App. 224, 232, 619 A.2d 1146, cert. denied, 225 Conn. 913, 623 A.2d 1024 (1993). This evidence tended to prove that a disturbance did, in fact, take place. Under the circumstances of this case, we cannot say that the trial court's admission into evidence of the shank, razor blade and metal rod was an abuse of discretion.[11] Accordingly, this claim is without merit.

## IV

The defendant next claims that the trial court improperly declined to charge the jury on informant testimony, thereby violating his due process right to a fair trial. The defendant contends that the trial court was bound to instruct the jury to scrutinize carefully Gouch's testimony for bias. Not only is there an absence of authority to support this proposition, but, in fact, "[a] criminal defendant is *not* entitled to an instruction singling out any witness who testifies for the state regarding that witness' possible motivation for testifying falsely." (Emphasis added.) *State* v. *Sinchak*, 47 Conn. App. 134, 143, 703 A.2d 790 (1997), cert. granted on other grounds, 243 Conn. 964, 707 A.2d 1266 (1998). Moreover, our Supreme Court has stated that "[t]o require the court to single out witnesses upon request for comment upon their interest in the outcome of the case as a motive to falsify their testimony would not only constitute regression in the progress achieved in permitting the jury to identify and weigh such motives for themselves, but would also, in many circumstances, frustrate the efforts of the trial judge to deliver evenly balanced instructions to the jury to consider the interest in the

---

[11] We are further persuaded by the jury's acquittal of the defendant of the manslaughter charge that these weapons did not so inflame the jury as to make their admission into evidence more prejudicial than probative.

outcome of all the witnesses, testifying for both sides. In some circumstances, to require such an instruction would invade the province of the jury which has repeatedly been held by this court to be the sole body to determine the credibility of witnesses." *State* v. *Cooper*, 182 Conn. 207, 217–18, 438 A.2d 418 (1980). Accordingly, we conclude that the defendant's claim is without merit.

V

The defendant finally claims that the trial court violated his due process right to a fair trial by declining to charge the jury that specific intent is an element of the offense of rioting at a correctional institution under § 53a-179b. The defendant has offered no authority to support his proposition that specific intent is an element of the offense of rioting at a correctional institution. We reject the claim because we have previously held that "the offense of rioting at a correctional institution does *not* require any particular scienter; it is *not* a specific intent crime." (Emphasis added.) *State* v. *Nelson*, 44 Conn. App. 264, 270, 689 A.2d 481 (1997); see also *State* v. *Nixon*, 32 Conn. App. 224, 250, 630 A.2d 74 (1993), aff'd, 231 Conn. 545, 651 A.2d 1264 (1995).

The judgment is affirmed.

In this opinion the other judges concurred.