JACK SMITH *v.* COMMISSIONER OF CORRECTION
(AC 30278)

Bishop, Harper and West, Js.

Argued February 3—officially released May 11, 2010

*Mark M. Rembish,* special public defender, for the appellant (petitioner).

*James M. Ralls,* senior assistant state's attorney, with whom, on the brief, were *Kevin T. Kane,* chief state's attorney, and *Angela R. Macchiarulo,* senior assistant state's attorney, for the appellee (respondent).

*Opinion*

BISHOP, J. The petitioner, Jack Smith, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly concluded that he received effective assistance of counsel.[1] We affirm the judgment of the habeas court.

---

[1] The petitioner also claims that, in assessing his claim of ineffective assistance, the court applied an improper legal standard. In order to succeed on a claim of ineffective assistance of counsel, the petitioner must prove both deficient performance and resulting prejudice. *Strickland* v. *Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). On appeal, the petitioner claims that the court improperly applied the prejudice standard set forth in *Hill* v. *Lockhart,* 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203

The following factual and procedural history is relevant to our resolution of the petitioner's claim. The petitioner was the defendant in six different criminal cases pending in the Superior Court in the judicial district of Stamford-Norwalk.[2] In late August or early September, 2000, the petitioner hired attorney Christian Bujdud, who had previously represented the petitioner on multiple occasions, to represent him in all of the pending criminal cases.[3] Bujdud participated in pretrial negotiations with the state and the court, *Nigro, J.*, and, on October 12, 2000, presented the petitioner with two alternative plea offers, one from the state and one from the court. In exchange for agreeing to plead guilty to two counts of robbery in the first degree, the state offered a "capped" fifteen year sentence with a reserved right to argue for a lesser sentence. Alternatively, the court made an offer that if the petitioner pleaded guilty to the same charges, the court would sentence him to two concurrent terms of twelve years each with five years of special parole. Under the court's proposal, the petitioner would not retain the right to argue for a lesser sentence. On the same day the petitioner was presented with the alternate offers, he accepted the state's offer.

(1985), which modified *Strickland*'s prejudice prong for cases involving pleas, rather than the prejudice prong under *Strickland. Strickland* v. *Washington*, supra, 687. Because the court found that the petitioner had failed to prove deficient performance by his attorney, it did not need to address the issue of prejudice. Further, because we agree with the court that the petitioner failed to prove that his attorney's performance was deficient, we need not reach the question of whether the court applied the proper standard for determining prejudice.

[2] The petitioner had cases pending for docket numbers CR-99-134322, CR-99-089993, CR-99-089994, CR-00-131532, CR-00-132802 and CR-00-133017, in which he was charged with, inter alia, six counts of robbery in the first degree, two counts of larceny in the third degree, two counts of burglary in the third degree and three counts of larceny in the sixth degree.

[3] After he was arrested on the relevant charges in June and July, 2000, and prior to hiring attorney Bujdud, the petitioner was represented by attorney John Regan. During the period in which he was represented by Regan, the state made the petitioner a plea offer of fifteen years to serve.

Accordingly, he pleaded guilty to two counts of robbery in the first degree in violation of General Statutes § 53a-134 in exchange for a sentence of not more than fifteen years total with a right to argue for less.[4] During the plea canvass, the court cautioned the petitioner that, should he proceed with the state's offer, it was unlikely that the court would sentence him to less than fifteen years, in spite of his right to argue, unless the presentence investigation and probation report revealed something extraordinary in his favor.[5] In response to this caution, the petitioner indicated that he understood the circumstances and that he still wanted to plead guilty under the terms offered by the state. On December 14, 2000, the court, *Nigro, J.*, sentenced the petitioner to a total effective period of incarceration of fifteen years.

On September 27, 2004, the petitioner filed a petition for a writ of habeas corpus, in which he claimed that he had been denied the effective assistance of counsel in his underlying criminal matter because he had not been properly advised by his attorney at the time of the guilty pleas. Specifically, the petitioner claimed that Bujdud improperly recommended that he accept the offer of fifteen years with the right to argue for less, despite the fact that Bujdud heard the court's warning that it was unlikely to impose a sentence below the fifteen year cap, and that Bujdud knew or should have

---

[4] The petitioner pleaded guilty to robbery charges in two of the open files, CR-99-089993 and CR-00-133017, and, pursuant to the plea agreement, the state nolled all of the remaining charges in those two files as well as in the petitioner's four other open files.

[5] During the plea canvass the court stated: "I don't want to have [the petitioner] misunderstand. To me, a cap means that's the most likely sentence unless there's something in his presentence investigation report to indicate that he's rescued someone from a burning building and received a reward for it or has [a] substantial previous criminal record or some other things [that] speak on his behalf. So, if it's a cap, don't misunderstand. The [presentence investigation report] has got to indicate that there's something in his background that would warrant me in giving him less than fifteen years."

known that the presentence investigation report would not reveal any extraordinary favorable information. Additionally, the petitioner alleged that at the sentencing hearing, Bujdud failed to present any facts to the court to justify a downward departure from the fifteen year cap. Finally, the petitioner claimed that, but for Bujdud's advice, he would not have received a sentence greater than twelve years. Following a trial to the court, *Swords, J.*, the petition was denied. On August 7, 2008, the petitioner filed a petition for certification to appeal, which was granted. This appeal followed. Additional facts will be set forth as necessary.

On appeal, the petitioner first claims that the habeas court improperly found that he received effective assistance of counsel. We disagree.

The following additional facts are relevant to our resolution of the petitioner's claim. At the habeas trial, the court heard testimony from the petitioner, attorney Jeffrey Beck, the petitioner's expert witness, and Bujdud. The petitioner testified that during the plea canvass, after the court had cautioned that it was unlikely that it would impose a sentence shorter than fifteen years unless the presentence investigation report contained new information, he did not think that the capped fifteen year sentence was his best option. He testified that he then spoke briefly with Bujdud off the record, and he claimed that Bujdud assured him that the capped sentence was his best option. The petitioner testified further that he relied on Bujdud's advice, and that, but for this advice, he would have accepted the court's initial offer and taken the offer of twelve years to serve. The petitioner admitted, however, that Bujdud did not force him to accept the plea offer and acknowledged that the decision was his alone.

Beck, who testified that he had represented approximately 1000 criminal defendants in his legal career,

appeared as an expert witness on behalf of the petitioner. Beck testified that, based on the court's comments during the plea canvass, the fifteen year sentence seemed to be a foregone conclusion, and Bujdud should have asked for a recess or a continuance to meet with the petitioner and conduct a mock presentence interview to determine whether there was anything in the petitioner's background that likely would have caused the judge to impose a sentence of less than fifteen years. Additionally, Beck expressed the view that there was nothing in the petitioner's background that likely would have caused the judge to impose a sentence of less than fifteen years. Beck also testified that a reasonably competent attorney would not have recommended that the petitioner accept the fifteen year offer with a right to argue for a lesser period of incarceration. On cross-examination, however, Beck conceded that he did not know if October 12, 2000, had been set as a date on which the petitioner had to accept or reject any pending offers, that he had not spoken to the prosecutor who handled the petitioner's case and that he had only handled about twelve cases in Stamford, one of which was before Judge Nigro.

Bujdud, who had handled several thousand criminal cases, testified that he had participated in pretrial discussions in the underlying criminal matter and that he had informed the court of his prior representation of the petitioner, the petitioner's drug dependency, prior criminal history, family history, the fact that the petitioner had never been incarcerated and that the crimes for which the petitioner was charged were all drug related. Bujdud explained that he had met with the petitioner and reviewed the respective offers and the consequences of each option. Bujdud testified that the petitioner insisted that he would not accept the twelve year offer. Bujdud stated that he did not make a recommendation as to which offer the petitioner should

accept, but that he advised the petitioner that even with the right to argue for less he could still be sentenced to fifteen years of incarceration. Bujdud asserted that he never told the petitioner to reject the twelve year offer. He testified that during the plea canvass, after the court's comments, he spoke with the petitioner off the record, during which he told the petitioner that they could pass the case to discuss his options further but the petitioner declined, saying that he "didn't want to take the twelve years," that he "wasn't going to accept twelve years" and that "[he's] not doing twelve years, you argue for less." Bujdud also testified that he was surprised by the sentence the petitioner received. He had appeared before Judge Nigro for criminal sentencing hearings on ten to seventeen previous occasions and had never seen the court impose the maximum sentence authorized under a plea agreement with a cap. Bujdud testified that he met with the petitioner on the day of his sentencing and went over the presentence report with him and that at the sentencing hearing, he advocated for a sentence of fifteen years, suspended after seven years.

The habeas court found the petitioner's testimony that Bujdud had recommended that he take the offer involving a fifteen year sentence with the right to argue for less not to be credible. Conversely, the court found credible Bujdud's testimony that he gave no specific recommendation to the petitioner. On the basis of the court's factual finding that Bujdud did not recommend that the petitioner take the state's offer, the court concluded that the petitioner had failed to prove the heart of his claim regarding advice he claimed Bujdud had given to him.

In his closing argument before the habeas court, the petitioner also claimed that Bujdud had been ineffective for failing to advise him to accept the twelve year offer. In response, the court determined that Bujdud did not

have a duty to make a recommendation as to which offer to accept. Rather, the court found that Bujdud used a reasonable approach to his representation of the petitioner by discussing with him the consequences of the two offers, while not recommending one over the other. The court concluded that Bujdud's representation and advice were "squarely within the wide range of reasonableness" that is required of a competent attorney. (Internal quotation marks omitted.) The petitioner now challenges the court's conclusion.

Initially, we set forth the well established standard of review that "[i]n a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Dorce* v. *Commissioner of Correction*, 118 Conn. App. 750, 753, 984 A.2d 1173 (2010). We note, also, that "[i]t is well established that a reviewing court is not in the position to make credibility determinations. . . . This court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *Lewis* v. *Commissioner of Correction*, 117 Conn. App. 120, 125–26, 977 A.2d 772, cert. denied, 294 Conn. 904, 982 A.2d 647 (2009).

We analyze claims of ineffective assistance of counsel under the test set forth by the United States Supreme Court in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "In *Strickland* . . . the United States Supreme Court enunciated the two requirements that must be met before a petitioner is entitled to reversal of a conviction due to ineffective

assistance of counsel. First, the [petitioner] must show that counsel's performance was deficient. . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversarial process that renders the result unreliable." (Internal quotation marks omitted.) *Dorce* v. *Commissioner of Correction*, supra, 118 Conn. App. 753–54. "To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Turner* v. *Commissioner of Correction*, 118 Conn. App. 565, 568, 984 A.2d 793 (2009). "For ineffectiveness claims resulting from guilty pleas, we apply the standard set forth in *Hill* v. *Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), which modified *Strickland*'s prejudice prong. . . . To satisfy the prejudice prong, the petitioner must show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[6] (Internal quotation marks omitted.) *Dorce* v. *Commissioner of Correction*, supra, 754. "A reviewing court need not address both components of the inquiry if the [petitioner] makes an insufficient showing on one." (Internal quotation marks omitted.) Id.

---

[6] As noted in footnote 1 of this opinion, the petitioner argues in his second claim that the modified prejudice prong from *Hill* is not applicable in this case. Because we decide this case based on the performance prong under *Strickland,* we do not reach the petitioner's claim regarding the prejudice prong.

In this instance, we review the petitioner's claim of ineffective assistance of counsel first by measuring the record and the court's findings in light of the performance prong of the test set forth in *Strickland*. Upon careful review of the record, we conclude that the petitioner has failed to "demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." (Internal quotation marks omitted.) *Turner* v. *Commissioner of Correction*, supra, 118 Conn. App. 568.

In its memorandum of decision, the court specifically noted that it found the petitioner's testimony that Bujdud had recommended that he accept the fifteen year offer to be not credible. Instead, the court credited Bujdud's testimony that he gave no specific recommendation. Based on the finding that Bujdud did not recommend that the petitioner accept the fifteen year offer, the court found that the petitioner had failed to prove that Bujdud had rendered deficient performance by recommending acceptance of that offer. The court was in the best position to review the credibility of the witnesses and, on appeal, we defer to the court's assessment. See *Lewis* v. *Commissioner of Correction*, supra, 117 Conn. App. 125–26. As noted, we do not disturb the court's factual findings unless they are clearly erroneous. See *Dorce* v. *Commissioner of Correction*, supra, 118 Conn. App. 753. The record in this instance amply supports the court's conclusions in this regard. Based on the facts reasonably found, the court correctly concluded that the petitioner had failed to meet his burden of proving that Bujdud rendered deficient performance by recommending that the petitioner accept the fifteen year offer.

As to the petitioner's claim that Bujdud rendered deficient performance by failing to recommend affirmatively that the petitioner accept the offer for a flat sentence of twelve years with five years of special parole,

we find no fault in the court's determination that Bujdud was under no duty to recommend which of the alternate plea offers he should accept. An attorney has an obligation to inform his client of any plea offers, and to meaningfully explain those offers. *Sanders* v. *Commissioner of Correction*, 83 Conn. App. 543, 851 A.2d 313, cert. denied, 271 Conn. 914, 859 A.2d 569 (2004). Under certain circumstances, failing to advise a client to accept a plea offer, rather than to go forward with a trial, may amount to ineffective assistance. See *Ebron* v. *Commissioner of Correction*, 120 Conn. App. 560, 573, 992 A.2d 1200 (2010), citing *United States* v. *Gordon*, 156 F.3d 376, 380 (2d Cir. 1998). However, "the ultimate decision whether to plead guilty must be made by the defendant. . . . And a lawyer must take care not to coerce a client into either accepting or rejecting a plea offer. . . . Counsel's conclusion as to how best to advise a client in order to avoid, on the one hand, failing to give advice and, on the other, coercing a plea enjoys a wide range of reasonableness because [r]epresentation is an art . . . and [t]here are countless ways to provide effective assistance in any given case . . . ." (Internal quotation marks omitted.) *Edwards* v. *Commissioner of Correction*, 87 Conn. App. 517, 524, 865 A.2d 1231 (2005). The court found that Bujdud properly handled the alternate offers in his representation of the petitioner by discussing with him the consequences of each offer while leaving the ultimate choice to the petitioner. The court concluded that Bujdud's representation and advice were "squarely within the wide range of reasonableness" that is required of a competent attorney. (Internal quotation marks omitted.) We agree. The court properly determined that the petitioner failed to show that he had been deprived of the effective assistance of counsel in his underlying criminal matter.

The judgment is affirmed.

In this opinion the other judges concurred.