JOSE J. MARTINEZ *v.* COMMISSIONER
OF CORRECTION
(AC 34428)

Bear, Keller and Peters, Js.

Argued October 18—officially released December 24, 2013

*Robert T. Rimmer,* assigned counsel, for the appellant (petitioner).

*Sarah Hanna,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Adrienne Maciulewski,* deputy assistant state's attorney, for the appellee (respondent).

*Opinion*

KELLER, J. The petitioner, Jose J. Martinez, appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly rejected his claims that his trial counsel, Attorney Howard A. Lawrence, rendered ineffective assistance by failing to (1) move to dismiss the underlying criminal charge for lack of jurisdiction because a hearing in probable cause was not held within sixty days of the filing of the information as required by General Statutes § 54-46a, (2) seek a special credibility instruction as to

the testimony of jailhouse informants, and (3) explain meaningfully to the petitioner the state's final plea offer. We disagree, and, accordingly, affirm the judgment of the habeas court.

This case arises from the petitioner's conviction in 2003 of manslaughter in the first degree with a firearm in violation of General Statutes § 53a-55a. The following facts and procedural history are relevant to the resolution of this appeal. "The [petitioner] and the victim, Hector Pacheco, sold heroin in the area of Poplar Street in New Haven. On the evening of September 2, 1996, the [petitioner] and the victim had a loud argument concerning the [petitioner's] intention to sell drugs at a location used by the victim. The victim told the [petitioner] that 'it wasn't going to happen,' and the [petitioner] became upset.

"The next morning, at approximately 9:30 a.m., the victim and the [petitioner] had a second argument, and the victim reiterated his position that he would prevent the [petitioner] from seizing his location. The [petitioner] then left the area but returned later that morning. He told the victim, 'I told you I'd be back,' and drew a handgun from the inside of his pants. The [petitioner] shot the victim and fled from the area while the victim was taken to Yale-New Haven Hospital, where he subsequently died. Thomas Gilchrist, a pathologist in the chief medical examiner's officer, performed an autopsy and determined that a gunshot wound to the chest and abdomen caused the victim's death.

"Following an investigation, the police obtained an arrest warrant but were unable to locate the [petitioner] for several years. After shooting the victim, the [petitioner] fled to Philadelphia, Pennsylvania, and used a false name and date of birth to escape discovery. While using the alias 'Edwin Acevedo,' the [petitioner] was

arrested on unrelated charges and placed in custody in 1999.

"The [petitioner's] identity eventually was discovered, and he was returned to Connecticut." (Footnote omitted.) *State* v. *Martinez*, 95 Conn. App. 162, 164–65, 896 A.2d 109, cert. denied, 279 Conn. 902, 901 A.2d 1224 (2006). Subsequently, the petitioner was first arraigned in the New Haven judicial district on August 24, 2001, at which time he was twenty-one years old, and the case was transferred to the adult part A criminal docket. On October 19, 2001, the petitioner, who was fifteen years and eleven months old at the time the crime was committed, appeared for the purposes of commencing a hearing in probable cause. There, it was discovered that the statutory procedures for initiating criminal procedures against a minor had not been observed. Therefore, in accordance with General Statutes § 46b-133 (b), the court, *Blue, J.*, ordered the case to be transferred to the Superior Court for Juvenile Matters (juvenile court).[1] The petitioner appeared before the juvenile court on October 24, 2001, where, on the basis of the charges and his age at the time of the offense, the case automatically was transferred back to the adult part B criminal docket pursuant to General Statutes (Rev. to 2001) § 46b-127.[2] On the same day, October 24, 2001, the petitioner was arraigned anew and his case was transferred to the adult part A criminal docket. The court held the petitioner's probable cause hearing on November 2, 2001, and November 26, 2001.

---

[1] General Statutes § 46b-133 (b) provides in relevant part: "Whenever a child is brought before a judge of the Superior Court, such judge shall immediately have the case proceeded upon as a juvenile matter. . . ."

[2] General Statutes (Rev. to 2001) § 46b-127 (a) provides in relevant part: "The court shall automatically transfer from the docket for juvenile matters to the regular criminal docket of the Superior Court the case of any child charged with the commission of a . . . class A or B felony . . . provided such offense was committed after such child attained the age of fourteen years and counsel has been appointed for such child if such child is indigent. . . ."

The petitioner's first trial resulted in a mistrial because the jury could not reach a unanimous verdict. Id., 166 n.2. After a second jury trial, the petitioner was convicted of manslaughter in the first degree with a firearm. Id., 166. The court, *Hon. Ronald J. Fracasse*, judge trial referee, sentenced the petitioner to forty years imprisonment, suspended after thirty years, followed by five years probation. Id. Lawrence represented the petitioner at all relevant times throughout the two trials. Following the petitioner's direct appeal, this court affirmed the judgment of conviction. Id. This habeas action followed.

The petitioner filed two habeas petitions, on September 6, 2006, and March 31, 2010, following his conviction and direct appeal. The respondent, the commissioner of correction, moved to consolidate the petitions, which the court, *Fuger, J.*, granted. On June 29, 2011, the petitioner filed an amended petition that alleged that the performance of his trial counsel was ineffective in several ways. Specifically, the petitioner claimed, inter alia, that Lawrence rendered deficient representation because he failed to (1) move to dismiss for lack of jurisdiction because a hearing in probable cause was not held within sixty days of the filing of the information as required by § 54-46a, (2) seek a special credibility instruction as to the testimony of jailhouse informants, and (3) explain meaningfully and adequately to the petitioner the state's final plea offer.[3]

Following a trial at which both the petitioner and Lawrence testified, the habeas court, *Cobb, J.*, issued its memorandum of decision denying the amended petition on all counts. With respect to the petitioner's first two

---

[3] In the second count of his amended petition, the petitioner alleged ineffective assistance of appellate counsel. In the third count, the petitioner alleged actual innocence. The petitioner's actual innocence claim was withdrawn at trial. The petitioner has not appealed from the court's judgment with respect to the efficacy of appellate counsel's performance.

claims, the habeas court concluded that the petitioner had failed to produce any evidence establishing that Lawrence's reasons not to move to dismiss or to request a jailhouse informant instruction were unreasonable, and, therefore, that the petitioner had failed to meet his burden of proving that Lawrence's representation was deficient. Also, the habeas court credited Lawrence's testimony over that of the petitioner and found that Lawrence meaningfully had explained the state's final plea offer to the petitioner in a manner that the petitioner could understand. The court granted the petition for certification to appeal on February 27, 2012. Additional facts will be set forth as necessary.

We initially set forth the standard of review and legal principles that guide our analysis of the petitioner's claims of ineffective assistance of counsel. "[I]n a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . . We note, also, that [i]t is well established that a reviewing court is not in the position to make credibility determinations. . . . This court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude." (Citation omitted; internal quotation marks omitted.) *Smith* v. *Commissioner of Correction*, 121 Conn. App. 85, 92, 994 A.2d 317, cert. denied, 297 Conn. 921, 996 A.2d 1193 (2010).

"A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel . . . . In *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], the United States Supreme Court established that for a petitioner to prevail on a

claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction . . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. . . .

"The first component of the *Strickland* test, generally referred to as the performance prong, requires that the petitioner show that counsel's representation fell below an objective standard of reasonableness. . . . In *Strickland*, the United States Supreme Court held that [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a [petitioner] to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense, after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. . . .

"Even if a petitioner shows that counsel's performance was deficient, the second prong, or prejudice

prong, requires that the petitioner show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Grant* v. *Commissioner of Correction*, 86 Conn. App. 392, 397–98, 861 A.2d 1191 (2004), cert. denied, 273 Conn. 903, 868 A.2d 744 (2005).

Mindful of these guiding principles, we address the petitioner's three claims of ineffective assistance of counsel in turn.

I

The petitioner first claims that the court erred in concluding that Lawrence did not render deficient performance by failing to move to dismiss the underlying criminal case for lack of jurisdiction because a hearing in probable cause was not held within sixty days of the filing of the information as required by § 54-46a.[4] We are not persuaded.

At the commencement of the habeas trial, the petitioner's habeas counsel stated that no evidence would be presented on this probable cause issue because the claim only required legal argument. The petitioner essentially argues that determining when the sixty day limitation period commenced—either on August 24, 2001, when the petitioner was first arraigned, or October 24, 2001, upon his transfer from juvenile court to the regular criminal docket—is dispositive of whether Lawrence rendered ineffective assistance of counsel. The petitioner contends that if the sixty day period commenced on August 24, 2001, Lawrence's failure to move to dismiss necessarily constituted ineffective

---

[4] General Statutes § 54-46a (b) provides in relevant part: "Unless waived by the accused person or extended by the court for good cause shown, such preliminary hearing [in probable cause] shall be conducted within sixty days of the filing of the complaint or information in Superior Court. . . ."

assistance of counsel because "there could be no possible strategic reasons to [forgo] a motion to dismiss." We are not persuaded.

Even if we assume the correctness of the petitioner's proposition that the sixty day limitation period commenced on August 24, 2001,[5] the petitioner has not satisfied his burden of demonstrating that Lawrence's performance was deficient. As we noted, with regard to the performance prong of *Strickland*, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Internal quotation marks omitted.) *Grant* v. *Commissioner of Correction*, supra, 86 Conn. App. 398. "The law presumes that counsel is competent until evidence has been introduced to the contrary. *Strickland* v. *Washington*, [supra, 466 U.S. 689]. It is elementary jurisprudence that the determination of whether counsel's conduct was ineffective is a peculiarly fact bound inquiry." *Lapointe* v. *Commissioner of Correction*, 67 Conn. App. 674, 679, 789 A.2d 491, cert. denied, 259 Conn. 932, 793 A.2d 1084 (2002). Moreover, "[i]t is well established that a petitioner in a habeas proceeding cannot rely on mere conjecture or speculation to satisfy either the performance or prejudice prong [of *Strickland*] but must instead offer demonstrable evidence in

[5] This proposition itself is questionable. In *In re Prudencio O.*, 229 Conn. 691, 698, 643 A.2d 265 (1994), our Supreme Court observed that "[i]n reviewing the statutes governing the transfer of juveniles to the regular criminal docket, we have recognized that the probable cause hearing mandated by § 54-46a is afforded a child *after* his case has been transferred to the regular criminal docket." (Emphasis in original.) The court further concluded that the statutory requirement that a hearing in probable cause shall be held within sixty days of the filing did not become effective until the juvenile had been transferred to the regular criminal docket and the information was filed. Id., 702.

support of his claim." (Internal quotation marks omitted.) *Lopez* v. *Commissioner of Correction*, 142 Conn. App. 53, 59, 64 A.3d 334 (2013).

In the present case, we agree with the habeas court that the petitioner did not overcome the presumption that under the circumstances, Lawrence rendered proper counsel by not moving to dismiss. The petitioner, by relying solely on his pretrial brief and the transcripts of the underlying proceedings in support of what he contends is a purely legal claim, failed to present the habeas court with any factual or evidentiary basis to determine whether Lawrence's performance, in fact, was deficient. Although Lawrence testified at the habeas trial, he was not asked about nor did he testify as to his reasons for not moving to dismiss. The record is completely devoid of any evidence by which the habeas court could have concluded that Lawrence's challenged action was a result of incompetence or sound strategic strategy. Indeed, to the contrary, the record suggests only possible strategic reasons why Lawrence could reasonably have decided *not* to move to dismiss on the ground of an untimely hearing in probable cause. For instance, it is not clear whether there was any legal basis upon which Lawrence could file a motion to dismiss; see footnote 5 of this opinion; and even if there was such a basis, Lawrence may have, in developing his trial strategy, decided that the petitioner would not have benefited from a dismissal.[6]

Despite the petitioner's bald, unsupported assertion that "there could be no possible strategic reasons to

---

[6] Even if a motion to dismiss had been filed and granted on the ground that the hearing in probable cause was untimely, the petitioner would have remained incarcerated in connection with an unrelated federal charge. Further, even if the court dismissed the case against the petitioner, the state could have recharged the petitioner. See General Statutes § 54-46a (c) ("[a] determination by the court that there is not probable cause to require the accused person to be put to trial for the offense charged shall not operate to prevent a subsequent prosecution of such accused person for the same offense").

[forgo] a motion to dismiss," the petitioner bore the burden of overcoming the contrary presumption, that "under the circumstances, the challenged action might be considered sound trial strategy." (Internal quotation marks omitted.) *Grant* v. *Commissioner of Correction*, supra, 86 Conn. App. 398. As the habeas court stated, "[t]rial counsel may have made a mistake in not pursuing [this matter] further or he [may] have decided for tactical reasons not to pursue [this claim]. Without evidence on [this issue], the court cannot determine the appropriateness of counsel's conduct and the petitioner cannot prevail on [this claim]." Recognizing that there is a strong presumption that the strategy employed by trial counsel is reasonable and the result of the exercise of professional judgment, we agree with the habeas court and conclude that the petitioner has not demonstrated that Lawrence's failure to file a motion to dismiss constituted ineffective assistance of counsel.

II

The petitioner next claims that Lawrence rendered ineffective assistance of counsel by failing to request a special credibility instruction as to the testimony of three jailhouse informants. Again, at the habeas trial, the petitioner's counsel stated that this claim only required legal argument and relied entirely on his pretrial brief and underlying transcripts. This claim merits little discussion without further factual evidence.

The following additional facts and procedural history are relevant to our resolution of this claim. At the petitioner's second trial, the state called three jailhouse informants to testify: Juan Torres, Lenny Ramos, and Martel Arrington. Prior to charging the jury, the court held an off-the-record charging conference, the details of which are unknown. Following the charging conference, Lawrence indicated that the parties were in

agreement with respect to the charges to be given. The court subsequently charged the jury.[7]

Our Supreme Court has stated: "[A] habeas proceeding provides a superior forum for the review of a claim of ineffective assistance because it provides the opportunity for an evidentiary hearing in which the attorney whose conduct is challenged may testify regarding the reasons he did not contest the instruction at trial. . . . A habeas proceeding thus enables the court to determine whether counsel's failure to take exception or otherwise to participate in formulating the instructions was due to mere incompetence or to counsel's trial strategy, which would not be possible in a direct appeal in which there is no possibility of an evidentiary hearing." (Citation omitted.) *State* v. *Kitchens*, 299 Conn. 447, 496–97, 10 A.3d 942 (2011).

The petitioner did not present any evidence with respect to this claim at the habeas trial. The record before us is devoid of any explanation as to why the petitioner's trial counsel agreed to the aforementioned jury instruction and did not file a request that the court give the jury a special credibility instruction as to the testimony of jailhouse informants. Again, the habeas

---

[7] In relevant part, the court charged the jury as follows: "In weighing the credibility of a witness, you may consider the fact that the witness has previously been convicted of a felony and give such weight to that fact as you decide is reasonable in weighing the credibility of that witness. . . .

"In this regard, the testimony of Juan Torres has been convicted of two felonies and that he has agreed with the federal authorities to testify in this trial. In this regard, you have heard testimony that Lenny Ramos has been convicted in the federal court of one felony. In this regard, you have also heard testimony that Martel Arrington has been convicted of two felonies in the state court, robbery in the first degree and larceny in the second, and three felonies in the federal court. Also, you have heard evidence that Martel Arrington has pleaded guilty to a felony in the federal court and is waiting to be sentenced for that crime, and he has agreed with the United States attorney to give substantial cooperation to the state in the prosecution of [the petitioner] in this trial. You may consider this evidence and give such weight to it as you decide is reasonable in weighing his credibility."

court noted the dearth of evidence on the issue of the failure to request a jailhouse informant instruction. It stated: "Trial counsel may have made a mistake in not pursuing [this matter] further or he [may] have decided for tactical reasons not to pursue [this claim]. Without evidence on [this issue], the court cannot determine the appropriateness of counsel's conduct and the petitioner cannot prevail on [this claim]."[8] In reliance on the rationale set forth in part I of this opinion, we agree.

## III

The petitioner's final claim is that Lawrence's representation was deficient because he failed to explain meaningfully to the petitioner the state's final plea offer. The petitioner offers three compounding reasons to support his contention that Lawrence failed to explain meaningfully the final plea offer. First, the petitioner asserts that although Lawrence conveyed the final plea offer to the petitioner, he "provided no meaningful explanation of this plea offer beyond the number of

[8] Moreover, controlling law at the time of the petitioner's trial was *State v. Santiago*, 48 Conn. App. 19, 708 A.2d 969, cert. denied, 245 Conn. 901, 719 A.2d 1164 (1998). Under *Santiago*, a defendant was not entitled to a jury instruction on informant testimony where a witness might have a motive to falsify his or her testimony. Id., 31–32; see also *State v. Ortiz*, 252 Conn. 533, 561, 747 A.2d 487 (2000) (defendant not entitled to jury instruction that witness may have motive for testifying falsely unless witness is either victim or accomplice). *State v. Patterson*, 276 Conn. 452, 471, 886 A.2d 777 (2005), which overruled *Santiago* in part, was not decided until two years after the petitioner's trial concluded. Id. (defendant entitled to special credibility instruction where jailhouse informant received benefits from state in exchange for cooperation). It is well settled that "counsel's failure to advance novel legal theories or arguments does not constitute ineffective performance. . . . Nor is counsel required to change then-existing law to provide effective representation. . . . Counsel instead performs effectively when he elects to maneuver within the existing law, declining to present untested . . . legal theories." (Citations omitted; internal quotation marks omitted.) *Ledbetter v. Commissioner of Correction*, 275 Conn. 451, 461–62, 880 A.2d 160 (2005), cert. denied sub nom. *Ledbetter v. Lantz*, 546 U.S. 1187, 126 S. Ct. 1368, 164 L. Ed. 2d 77 (2006).

years offered." Second, the petitioner argues that Lawrence did not discuss the plea offer with the petitioner with respect to the effect of the state's intention to call witnesses at the second trial who were not called at the first trial. Finally, the petitioner argues that any out-of-court explanations that Lawrence did proffer were in English, whereas the petitioner required the assistance of a Spanish language interpreter, which Lawrence failed to provide. We disagree.

The following additional facts, adduced at the petitioner's habeas trial, are relevant to our resolution of this claim. At the habeas trial, the court heard testimony from the petitioner, Lawrence, and Suzanne Silengo, a teacher at the Cheshire Correctional Facility, where the petitioner was incarcerated at the time of the habeas trial. The petitioner testified that he was born in Puerto Rico and moved to the United States when he was "about 10 years old." Although the petitioner attended public school in New Haven, where he took English classes, through the ninth grade, he maintained that he could not converse in English and knew only a few words at the time of his criminal trials. Silengo testified in support of the petitioner's version of events. She stated that the petitioner approached her in January, 2005, while he was incarcerated, and asked to be admitted to the National External Diploma Program in order to obtain his high school diploma. Silengo further testified that at that time, two years after the petitioner's criminal trials and conviction, his proficiency in English was not sufficiently advanced for him to enter the program, as his literacy, she estimated, was at a third grade level. In opposition, Lawrence, who had represented the petitioner for more than two years, testified that "[i]t was clear that [the petitioner] understood me," and that when they conversed, "I was certain that [the petitioner] understood what I said, and we spoke slowly." Also, Lawrence averred that the petitioner

never asked for an interpreter to be present during their out-of-court meetings.

Prior to the petitioner's first trial, the state's only plea offer to the petitioner was for forty years incarceration, which the petitioner rejected.[9] Following the mistrial, and prior to the second trial, the state made two subsequent plea offers, the first for twenty-five years, and the second for twenty years. The petitioner testified that Lawrence presented the twenty-five year and twenty year offers to him, but they did not have any substantive discussion about the pleas beyond the number of years offered. The petitioner further maintained that Lawrence represented to him that "[the petitioner] was going to be fine, that we were going to trial." Lawrence, however, testified that he advised the petitioner to reject the twenty-five and twenty year offers, and explained his rationale, specifically, that on the basis of his experience, and because the first trial resulted in a mistrial, the terms of the plea deal would improve as trial drew nearer. The petitioner followed Lawrence's advice and rejected the twenty-five and twenty year plea offers.

The state eventually made a final plea offer to the petitioner of fifteen years with the right to argue for less, but not less than ten years. The petitioner testified that Lawrence did not discuss the final plea offer with him and that "he only gave me the offer and told me not to worry." He further testified that he relied on the advice of Lawrence, who "told [him] we were going to go to trial . . . ." Lawrence, in contrast, testified that he advised the petitioner that the final plea offer "was the offer to take," and explained the significant risk of going to trial a second time—a possible forty-five year

---

[9] The court found that "Lawrence advised the petitioner not to take the offer because it was only five years less than his total exposure on the charges of forty-five years, and Lawrence therefore believed, and advised the petitioner, that he had nothing to lose in going to trial."

sentence—after the state had had a practice trial, i.e., the first trial resulting in a mistrial. Additionally, Lawrence testified that the petitioner expressed the belief that, because the first trial had resulted in a mistrial, he "would do at least as well" as in the first trial. Lawrence testified that the petitioner was adamant about going to trial despite Lawrence's recommendation to accept the plea.

After Lawrence initially received and discussed the final plea offer with the petitioner, he learned that the state intended to call different witnesses at the second trial than it called at the first trial. Specifically, at the first trial, the state called three eyewitnesses—Margie Marquez, Mary Rea and Yamada Hernandez—and a jailhouse informant, Torres. At the second trial, the state intended to call only Hernandez and Torres, as well as two additional jailhouse informant witnesses, Ramos and Arrington. Additionally, Lawrence testified that the state planned to call an eyewitness, Nilda Santos, who claimed to have seen the underlying events and called 911 but could not be located at the time of the first trial. Lawrence maintains that upon learning of the new witnesses, he informed the petitioner of these new witnesses and entered into a renewed discussion with the petitioner, again advising him to accept the fifteen year plea offer. He testified that upon receipt of the state's witness list, he "went over with [the petitioner] who they were and what they were likely to say," including new testimony introducing evidence that the motive behind the shooting was an argument related to the sale of drugs. He further testified that, upon showing the petitioner the witness list, the petitioner indicated that he knew the three jailhouse informant witnesses, as well as Hernandez, whom he knew "from the neighborhood." Lawrence averred that he was "[m]ilitant" with respect to his renewed recommendation that the petitioner accept the fifteen year plea offer, and that he

explained the risk of the additional eyewitness, Santos, testifying. In contrast, the petitioner testified that Lawrence did not inform him of the new witnesses and evidence the state planned to introduce, and that he "thought the same people who testified in the first trial would testify in the second trial." Moreover, he maintained that if he had known the witnesses and evidence would be different in the second trial, he would have taken the final plea offer.

We find no fault in the court's determination that Lawrence meaningfully explained the state's final plea offer to the petitioner. "An attorney has an obligation to inform his client of any plea offers, and to meaningfully explain those offers. . . . Under certain circumstances, failing to advise a client to accept a plea offer, rather than to go forward with a trial, may amount to ineffective assistance. . . . However, the ultimate decision whether to plead guilty must be made by the defendant. . . . And a lawyer must take care not to coerce a client into either accepting or rejecting a plea offer. . . . Counsel's conclusion as to how best to advise a client in order to avoid, on the one hand, failing to give advice and, on the other, coercing a plea enjoys a wide range of reasonableness because [r]epresentation is an art . . . and [t]here are countless ways to provide effective assistance in any given case . . . ." (Internal quotation marks omitted.) *Smith* v. *Commissioner of Correction*, supra, 121 Conn. App. 95. "Counsel rendering advice in this critical area may take into account, among other factors, the defendant's chances of prevailing at trial, the likely disparity in sentencing after a full trial as compared to a guilty plea (whether or not accompanied by an agreement with the government), whether defendant has maintained his innocence, and the defendant's comprehension of the various factors that will inform his plea decision."

(Internal quotation marks omitted.) *Edwards* v. *Commissioner of Correction*, 87 Conn. App. 517, 524–25, 865 A.2d 1231 (2005).

The petitioner's claim on appeal that Lawrence did not explain meaningfully the final plea offer is premised on the notion that the court improperly credited Lawrence's testimony and rejected the petitioner's version of events. That is, the court's finding that the petitioner had not proven his claim of ineffective assistance of counsel is based on a credibility determination. "[I]t is well established that a reviewing court is not in the position to make credibility determinations. . . . This court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *Smith* v. *Commissioner of Correction*, supra, 121 Conn. App. 92.

We conclude that the habeas court's findings—that Lawrence meaningfully explained the state's final plea offer, informed the petitioner of the new witnesses, explained the risks of going to trial, and did so in a manner that the petitioner could understand—were not clearly erroneous. Indeed, the factual findings and conclusions in the habeas court's memorandum of decision were supported fully by the testimony at trial. The court specifically stated that it found the petitioner's testimony that Lawrence, "an experienced criminal trial attorney," did not discuss the offer with the petitioner, inform him of the new witnesses or advise him of the risks of going to trial to be "incredible." Instead, the court credited Lawrence's testimony to the contrary. On the basis of these credibility determinations, the court found that the petitioner had failed to prove that Lawrence rendered deficient performance by failing to

explain meaningfully the state's final plea offer. Confronted with conflicting testimony from the petitioner and Lawrence, the court credited the testimony of Lawrence. The habeas court is in the best position to assess the demeanor and credibility of the witnesses before it and, on appeal, we defer to the court's assessment. *Smith* v. *Commissioner of Correction*, supra, 121 Conn. App. 94. In this instance, the record amply supports the court's conclusions that Lawrence meaningfully explained the plea offer to the petitioner, and that the petitioner adequately understood Lawrence's explanation. On the basis of the facts reasonably found, and because the petitioner's claim is premised entirely on the habeas court's credibility determinations, the petitioner is unable to demonstrate on appeal that the court improperly denied his amended petition for a writ of habeas corpus.

The judgment is affirmed.

In this opinion the other judges concurred.